**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RICHARD   LASKY,   and   JOSEPH
PUGLIA, on behalf of themselves and
others similarly situated,

          Plaintiffs,

FEDERAL AVIATION
ADMINITRATION, and BRYAN
BEDFORD, Administrator of the
Federal Aviation Administration, in his
offical capacity,

          Defendants.

_____/

Case No.: 26-cv-580

JURY TRIAL DEMANDED

**CLASS ACTION COMPLAINT**

Plaintiffs, ROBERT LASKY and JOSEPH PUGLIA ("Plaintiffs"),

individually and on behalf of themselves and all others similarly situated, by and

through their attorney, allege the following based on the investigation of counsel,

except as to allegations specifically pertaining to Plaintiffs, which are based on their

personal knowledge.

**NATURE OF THE ACTION**

1.     This is a class action under the Administrative Procedure Act ("APA"),

5 U.S.C. §§ 701–706, and the Fifth Amendment to the United States Constitution,

seeking declaratory process and relief against the Federal Aviation Administration

1

("FAA") and its Administrator, Bryan Bedford ("Bedford"), for promulgating and enforcing unlawful rules that deprive Designated Pilot Examiners ("DPEs") of procedural due process, and further enables the FAA to act contrary to federal Law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 5 U.S.C. §§ 701–706 (APA).

3. The United States has waived sovereign immunity for non-monetary relief under 5 U.S.C. § 702.

4. Venue is proper in this district under 28 U.S.C. §§ 1391(e)(1) because Bedford performs his official duties as Administrator of the FAA in this district and a substantial part of the events alleged herein occurred in this district. The FAA maintains Flight Standards District Offices throughout the United States, including in this district.

## PARTIES AND RELEVANT ACTORS AND TRANSACTIONS

5. Plaintiff, Richard Lasky ("Lasky") is a former DPE residing in Duval County, Florida, whose designation was terminated without appropriate due process. Lasky is a certified flight instructor, a commercial pilot, an airline transport pilot, and holds an FAA Medical Certificate. Lasky was over the age of 40 when his designation was terminated.

6. Plaintiff, Joseph Puglia ("Puglia") is a former DPE residing in Hernando County, Florida whose designation was terminated without appropriate due process.

2

Puglia is a senior pilot with over thirty-years' experience in commercial and private aviation. Puglia was over the age of 40 when his designation was terminated.

7. Defendant, FAA, is an agency of the United States government established by Congress in 1958. The FAA is responsible for regulation of civil aviation to promote air transportation safety. The FAA is located at 800 Independence Avenue, SW, Washington, DC 20591.

8. Defendant, Bedford, is the current administrator of the FAA, having served in that role since his confirmation by the United States Senate on July 9, 2025.

## CLASS ACTION ALLEGATIONS

9. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), and 23(b)(1)(3), on behalf of a class former DPEs whose designations were terminated by the FAA due to their age in violation of their respective rights of equal protection of the law under the Fifth Amendment to the United States Constitution. All designees were over the age of 40 when their designations were terminated and therefore constitute a protected class.

10. DPEs are not employees of the FAA but serve at the discretion of the Administrator subject to FAA administrative orders enacted by the Administrator, enacted within the prescripts of the Code of Federal Regulation ("CFR"), those legislative regulations issued pursuant to the FAA's statutory grant of authority, pursuant to requirements and limitations of the Administrative Procedures Act.

3

11. The DPE's are numerous, and geographically diverse across the United States so that joinder is impractical. Members of the Class may be identified from the documents obtained from the FAA pursuant to a freedom of information act request.

12. Plaintiffs' claims are typical of the claims of the other members of the DPEs in that all DPEs have been damaged by Defendants violations of the Administrative Procedures Act and termination in violation of equal protection, implicating the DPEs their liberty and property interests. All of the DPEs have been damaged as a result of the FAA's degeneration of due process protections under color of administrative rule making deference.

13. Plaintiffs will fairly and adequately protect the interests of other members of the DPEs. To assist them, Plaintiffs have retained counsel. Plaintiffs are not aware of any interest which is antagonistic to the interests of the other DPEs.

14. Common questions of law and fact exist as to all of the DPEs, and these predominate over any questions solely affecting individual members of the DPEs. Among the questions of law and fact common to the DPEs:

a. Whether the promulgation of 14 C.F.R. § 406 in 1954, without notice or opportunity for comment, was in violation of the Administrative Procedures Act;

b. Whether the amendments to 14 CFR § 13.20 that became effective on November 30, 2021, exceeded the scope of the FAA's stated purpose and were in violation of the APA;

4

c.      Whether the 2021 amendments and the FAA's subsequent modifications of the FAA's internal operating Orders removing a right to appeal violated the DPEs' liberty interests under the Fifth Amendment to the U.S. Constitution;

d.      Whether the 2021 amendments and the FAA's subsequent modification of the FAA's internal operating Orders impermissibly stripped the DPEs of their previously exiting opportunity for judicial review pursuant to 49 U.S.C. § 46110(c);

e.      Whether the FAA's terminations of the DPEs, all over the age of 40, violated the equal protection rights under the Fifth Amendment to the United States Constitution.

15.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impractical. Plaintiffs are not aware of any difficulty that will be presented in managing this action as a class action.

## THE HISTORIC ADMINISTRATIVE AND DUE PROCESS CONTEXT

## THE CIVIL AERONAUTICS ACT

16.      In 1938 Congress passed the Civil Aeronautics Act of 1938 (the "1938 Act") creating the Civil Aeronautics Authority (the "Authority").  The stated purpose of the 1938 Act was "To create safety a Civil and Aeronautics to provide Authority, for and to promote the development and the regulation of civil aeronautics."

17.      Title VI of the 1938 was titled "Civil Aeronautics Safety Regulation, General Safety Powers and Duties, Minimum Standards, Rules and Regulations."

18.     As per its title, the purpose of Title VI of the 1938 Act was to provide a regulatory structure for aviation safety and authorized the Authority to promulgate appropriate rules and regulations, reading as follows:

> SEC. 601. (a) The Authority is empowered, and it shall be its duty to promote safety of flight in air commerce by prescribing and revising from time to time-
>
> […]
>
> (3) Reasonable rules and regulations and minimum standards governing, in the interest of safety, (A) the inspection, servicing, and overhaul of aircraft, aircraft engines, propellers, and appliances; (B) the equipment and facilities for such inspection, servicing, and overhaul; and (C) in the discretion of the Authority, the periods for, and the manner in, which such inspection, servicing, and overhaul shall be made, including provision for examinations and reports by properly qualified private persons whose examinations or reports the Authority may accept in lieu of those made by its officers and employees[.]

19.     This provision was the mechanism by which the first DPEs were appointed, and the basis for the designee program in general.

20.     Additionally, Title X of the 1938 Act, entitled "PROCEDURE" empowered the Authority, pursuant to Sec. 1001, to conduct its proceedings as follows:

> The Authority may conduct its proceedings in such manner as will be conducive to the proper dispatch of business and to the ends of justice. No member of the Authority shall participate in any hearing or proceeding in which he has a pecuniary interest. Any person may appear before the Authority and be heard in person or by attorney. Every vote and official act of the Authority shall be entered of record,

and its proceedings shall be open to the public upon the request of any interested party unless the Authority determines that secrecy is requisite on grounds of national defense.

21. Sec. 1002 of the 1938 Act additionally provided the Authority to accept complaints and conduct investigations, specifically as follows:

(a) Any person may file with the Authority a complaint in writing with respect to anything done or omitted to be done by any person in contravention of any provision of this Act, or of any requirement established pursuant thereto. If the person complained against shall not satisfy the complaint and there shall appear to be any reasonable ground for investigating the complaint, it shall be the duty of the Authority to investigate the matters complained of. Whenever the Authority is of the opinion that any complaint does not state facts which warrant an investigation or action on its part, it may dismiss such complaint without hearing.

[…]

(b) The Authority is empowered at any time to institute an investigation, on its own initiative, in any case and as to any matter or thing concerning which complaint is authorized to be made to or before the Authority by any provision of this Act, or concerning which any question may arise under any of the provisions of this Act, or relating to the enforcement of any of the provisions of this Act. The Authority shall have the same power to proceed with any investigation instituted on its own motion as though it had been appealed to by complaint.

22. Subsequently in 1940, the Authority was split into two separate agencies, the Civil Aeronautics Administration (the "CAA") and the Civil Aeronautics Board. It was at this time that the first DPEs were appointed. The original DPEs (the "CAB"),

as the previous administrative structure was not feasible to address the growing aviation needs.[1]

23. The CAA was responsible for safety regulation and oversight.

24. In 1944, Theodore P. Wright was appointed as the Administrator of the CAA.[2]

25. The CAA at this time had multiple budgetary constraints and also had received multiple complaints from persons in the aviation industry concerning backlogs of inspections and the corrupt practices of many CAA Inspectors. *Id.*, pp.

26. As a result of these budgetary constraints and complaints, Theodore Wright expanded on the previous use of private persons, to become what is now known as the modern day "Designee Program" wherein the bulk of the safety regulation and oversight would be transferred from the CAA Inspectors to private persons in the industry, and the CAA Inspectors would thereforth be responsible for the oversight and inspection of the designees. *Id.*, 147-48, 150-51.

27. The DPEs and others working under the Designee Program were considered by Congress to be "voluntary personnel", and the use of DPEs rapidly expanded:

---

[1] John W. Gelder S.Ed., *Air Law - The Federal Aviation Act of 1958,* 57 MICH. L. REV. 1214 (1959), pp. 1215-16. Available online at:
https://repository.law.umich.edu/mlr/vol57/iss8/5?utm_source=repository.law.umich.edu%2Fmlr%2Fvol57%2Fiss8%2F5&utm_medium=PDF&utm_campaign=PDFCoverPages

[2] John Wilson, *Turbulence Aloft: The Civil Aeronautics Administration Amid Wars and Rumors of Wars, U.S. Department of Transportation, Federal Aviation Administration*, 1979, p. 93. Available online at:
https://catalog.hathitrust.org/Record/000758892

> "Because of the scope and volume of Airman Services
> Activities and in order to provide a degree of prompt
> service to the public, it has been found necessary to
> designate responsible flight instructors within the industry
> to function in behalf of the administrator in the conduct of
> of flight tests leading to the issuance of pilot certificates
> with private pilot rating. [ . . .] Inasmuch as the Airman
> Services can never expect to increase its staff sufficiently to
> keep abreast of the expansion of the industry, it is placing
> more and more responsibility in the hands of the industry
> itself and assigning its field inspectors to supervisory
> duties."

*Report of the Secretary of Commerce,* Airman Service, 1948.

28. While Congress considered those under the Designee Program volunteers, certain Designees, such as DPEs who did not work for other designated employers, were able to individually charge for their services and it was deemed that competition amongst DPEs would prevent overcharging in the market. *Wilson*, *supra*, p. 151.

29. After the Administrative Procedures Act ("APA") was enacted by Congress in 1946, the Civil Aeronautics Board and Congress became aware of a need to amend the 1938 Act clarifying the Administrator's ability to delegate his authority to employees and to private person designees.

30. Multiple hearings were held during the 81st Congress on the need to grant explicit authority to the CAB, the Secretary of Commerce and the Administrator of the CAA to delegate such authority to employees and private persons to keep abreast of the rapidly expanding aviation industry.

31.    Initial legislation proposed by the Senate, S. 448 (1949), was substantially the same as H. R. 4082 (1949), and dealt specifically with the need to delegate the authority of the CAB to certain of its employees, the present delegations were implied. Such actions taken by such employees could be subject to collateral attacks. *See Civil Aeronautics Act Amendments, Hearings before a Subcommittee of the Committee on Interstate and Foreign Commerce, House of Representatives, 81st Congress, First Session*, May 5, 1949 ("Hearings, May 5, 1949") (attached hereto as Exhibit "1"), pp. 2-3.

32.    Specifically, additional review and appeal procedures taken by the CAB needed to be written into legislation to ensure that arbitrary orders were not issued by employees exercising delegated authority. *Id.*, 10-19.

33.    As such, statutory language was included providing the CAB with the ability to fully review facts at issue in the delegated decisions in addition to the legal basis for such determinations. As Congressman Joseph O'Hara of Minnesota noted at the time:

> "I think it is tremendously important because if the Board should take a limited view on the right of review of the examiner, then when the appellant got into the circuit court of appeals, where he has to go, he is limited almost exclusively to a question of law, where the damage may be done as a question of fact."

*Id.*, 18.

34.    Corollary legislation was also introduced regarding the CAA Administrator's ability to delegate duties to employees, with the same language as S.

10

448 and H. R. 4082.This legislation also included the ability of the Administrator to delegate to private persons in S. 450 (1949).

35.    The specific language in S. 450 regarding the secondary review of decisions made by employees acting pursuant to delegation read as follows:

> Reconsideration by Administrator –
>
> (c) Any person affected by any action taken by any such individual or individuals with respect to any matter assigned to him or them may apply for reconsideration by the Administrator of such action subject to such reasonable limitations as may be established by the Administrator and such application shall be passed upon by the Administrator. The Administrator, upon his own initiative, may reconsider the action of such person or persons either before or after it has become effective. If, upon reconsideration by the Administrator, it shall appear that the action in Question is in any respect unjust or unwarranted, the Administrator shall reverse, change, or modify the same accordingly; otherwise the Administrator shall affirm such action: Provided, That nothing in this subsection shall be construed as modifying, amending, or repealing any provisions of the Administrative Procedure Act.

H. R. 3047.

36.    During the 81st Congress, Reorganization Plan V of 1949 was sent to Congress by President Truman, and became effective on August 20, 1949.

37.    Reorganization Plan V transferred the CAA Administrator's authority to the Secretary of Commerce, and provided that the Secretary of Commerce could delegate his duties to any employees within his Department. *See* House Report No. 3047, dated September 5, 1950 ("H. R. 3047") (attached hereto as Exhibit "2").

38.     As such, the legislation in portions of S. 480 (H. R. 4082) and S. 450 (H. R. 3047) concerning the delegation of duties of the CAB and the Administrator were no longer necessary, and the agreed language, particularly with respect to any person requesting review of a decision made by an employee acting under delegation of the Administrator, was stricken. *Id*.

39.     These amendments, enacted in 1950, gave authority to the Administrator to designate functions to the CAA employees, and private persons and entities employing private persons subject to "regulations, supervision, and review as he may prescribe [. . .]."

40.     House Report No. 3047, dated September 5, 1950, discussed those amendments. The House Report read:

> "Amend the title so as to read:
>
> A bill to amend the Civil Aeronautics Act of 1938, as amended, by providing for the delegation of certain authority of the Secretary of Commerce and of the Administrator of Civil Aeronautics, and for other purposes.
>
> That title III of the Civil Aeronautics Act of 1938, as amended, is amended by adding thereto a new section as follows:
>
> DELEGATION OF POWERS AND DUTIES TO PRIVATE PERSONS
>
> Sec. 310. (a) In exercising and performing the powers and duties vested in him by this Act, the Secretary may, subject to such regulations, supervision, and review as he may prescribe, delegate to properly qualified private persons the function of performing any of such powers and duties respecting (1) the examination, inspection, and testing necessary to the issuance of certificates under title VI of this

Act, and (2) the issuance of such certificates in accordance with standards established by the Secretary or the Civil Aeronautics Board. The Secretary may establish the maximum fees which such persons may charge for their services and may rescind any such delegation at any time and for any reason which he deems appropriate.

"(b) The Administrator may, subject to such regulations, supervision, and review as he may prescribe, delegate to properly qualified private persons and to any employee or employees under his supervision, any work, business, or function delegated to him by the Civil Aeronautics Board respecting (1) the examination, inspection, and testing necessary to the issuance of certificates under Title VI of this Act, and (2) the issuance of such certificates in accordance with standards established by the Civil Aeronautics Board. The Administrator may establish the maximum fees which such private persons may charge for their services and may rescind any delegation made by him pursuant to this subsection at any time and for any reason which he deems appropriate.

"(c) Any person affected by any action taken by any private person exercising delegated authority under this section may apply for reconsideration of such action by the Secretary or the Administrator, as the case may be. The Secretary upon his own initiative, with respect to authority granted under subsection (a), or the Administrator upon his own initiative, with respect to the authority granted under subsection (b), may reconsider the action of any private person either before or after it has become effective. If, upon reconsideration by the Secretary or the Administrator, it shall appear that the action in question is in any respect unjust or unwarranted, the Secretary or the Administrator shall reverse, change, or modify the same accordingly; otherwise such action shall be affirmed: Provided, That nothing in this subsection shall be construed as modifying,

13

amending, or repealing any provisions of the Administrative Procedure Act.[3]

## Early Administrative Rules

41. Subsequent to the 1950 amendments, on December 30, 1950, the Administrator revised 14 C.F.R. § 406 – Certification Procedures, pursuant to Section 3 of the APA and issued revised regulations (the "1950 CFR Revisions"). *Part 406—Certification Procedures*, 15 Fed. Reg. 9437 (Dec. 30, 1950) (attached hereto as Exhibit "3").

42. These regulations explicitly recognized that designees operated under a certificate. Indeed, Subpart B of Part 406 – Issuance of Certificates, Section 18 was revised to read:

> § 406.18 Administration representatives. The following certificates may be issued by the Administration to qualified applicants in order that they may assist the Administration in performing the functions indicated.
>
> (a) Pilot examiner certificate—
>
> (1) Purpose. This certificate will authorize the holder to act as a pilot examiner for the Administration and to conduct flight examinations for the issuance of pilot certificates and ratings.
>
> (2) Application. An application for this certificate shall be made on a "Pilot Examiner Qualification Record and Flight Test Report," Form ACA-914.
>
> (3) Issuance. This certificate will be issued on a "Certificate of Authority," Form ACA-1382.

---

[3] Such portions were passed into Public Law on September 29, 1950, becoming Public Law 81-858.  *See* Pub. L. No. 81-858 (attached hereto as Exhibit "4").

(4) Reports. The holder of this certificate shall execute and submit in duplicate monthly, a "Flight Test Activity Report," Form ACA-857, to his Regional Office through his supervising agent.

43.     The 1950 revisions to 14 C.F.R. § 406 also included changes with respect to institutional designees employing private persons. Subpart B of Part 406 – Issuance of Certificates, Section 18, subpart (f) was amended to read:

Engineering representative certificates—

(1) Purpose. These certificates will authorize the holder to certify that certain engineering data pertaining/to certification of an aircraft or aircraft component, or pertinent to the maintenance, repair, or alteration of aircraft or aircraft components complies with the Civil Air Regulations.

(2) Application. An application for this certificate shall take the form of a letter from the nominee's employer requesting the appointment of the nominee as a designated engineering representative. This letter shall be accompanied by a Form ACA-1599, "Statement of Qualifications," executed by the nominee.

(3) Issuance. Two certificates will be issued the designee, a "Certificate of Designation," Form ACA-2001, and a "Certificate of Authority," Form ACA- 1382.

(4) Termination of designee's authority. The designee's authorization shall terminate: (i) At the written request of the designee or his employer. (ii) In the event that the designee leaves the employ of the employer by whom he was nominated. (iii) If, after proper investigation, it is determined that the designee has made improper use of, or was careless or incompetent in the exercise of, his authority or responsibility.

15

44.     In 1950, engineering representatives were the only designees authorized by the Administrator that were employed by private companies (referred to as factory designees) who received their delegations of authority though those private companies. As such, the termination procedures provided for termination of a private person by his employer. However, the Administrator reserved the right to conduct its own termination procedures and noted that a designee could be terminated after a "proper investigation."

## The 1954 Regulatory Amendments

45.     On June 8, 1954, the Administrator again amended 14 C.F.R. § 406, which purportedly was limited to certification procedures for airmen. However, it also moved the portions of 14 C.F.R. § 406 regarding the Administrator's authority to delegate certification to private persons to a newly Section 418 under 14 C.F.R. to address rules applicable to such delegations ("1954 CFR Amendments"). *Chapter II—Civil Aeronautics Administration, Department of Commerce Part 405— Certification Procedures, Part 418— Aviation Safety Representatives,* 19 Fed. Reg. 3353 (Jun. 8, 1954).

46.     The 1954 C.F.R. Amendments stated that "[t]his amendment imposes no additional burden on any person and, therefore, it may be made effective without prior notice." *Id.*, 3353.

47.     In the 1954 C.F.R. Amendments, Subpart B, titled Certification, 14 C.F.R. § 418.10 read:

> Selection. Except for Medical Examiners, Engineering Representatives, and Manufacturing Inspection Representatives, Aviation Safety Designated

16

Representatives are selected by the local Aviation Safety Agent upon a determination by such agent that the need for such designation exists. Medical Examiners are selected by the Chief, Medical Division, CAA, from qualified persons who have submitted application, Form ACA-861. Designated Engineering Representatives and Designated Manufacturing Inspection Representatives are selected by the Chief, Aircraft Engineering Division or his authorized representatives from those qualified persons whose requests for appointment have been initiated by letter accompanied by a Statement of Qualifications, Form ACA-1599.

48. The 1954 C.F.R. Amendments further stated in 14 C.F.R. § 418.12:

Duration, (a) Unless otherwise terminated under the provisions of paragraph (b) of this section a designation as a CAA Aviation Safety Representative shall be effective for one year from the date of issuance. Thereafter it may be renewed for additional periods of one year at the discretion of the Administrator.

(b) A designation shall terminate: (1) At the written request of the designee; (2) at the written request of the employer when the recommendation of such employer is required for issuance of the designation; (3) upon the separation of the designee from the employment of the employer who recommended him for the designation; (4) upon a finding by the Administrator or his authorized representative that the designee has not properly exercised or performed the privileges of such designation; (5) when the assistance of such designee is no longer required by the Administrator; or (6) *for any other reason which the Administrator deems appropriate.*

49. The 1954 C.F.R. Amendments promulgated by the Administrator, without notice or opportunity for comment, gave the Administrator for the first time unfettered administrative discretion to terminate a designation, notwithstanding the express reference to "regulations" in the 1938 Act, as amended, and was the first

17

time that the Administrator's broad statutory authority found its way into administrative rules, effectively rendering the remaining language regarding certificate termination superfluous.

## THE FEDERAL AVIATION ACT

50.     In 1958, Congress passed the Federal Aviation Act of 1958 (the "FAA Act"). The FAA Act was necessitated in part due to several major air accidents, wherein it was found that certain organizational structures of the 1938 Act, and its subsequent amendments, were found to be outdated and insufficient to deal with the rapidly exploding technology of the aviation industry.

51.     Congress declared the intent of the FAA Act was to create an agency that was independent of control by the executive branch and subject to the direct responsibility of Congress, provide that a single agency was responsible for promulgation of rules and regulations regarding air safety.  S. Rep. 1811, 85th Cong., 2d sess., p. 10 (1958).

52.     Significant portions of the 1938 Act were re-enacted without significant changes. House Report 2556 of the 85th Congress, Second Session stated:

> "[t]he committee of conference wishes to make it clear, that it endorses, as expressing the intention of the managers on the part of the Senate and the managers on the part of the House, the statements in the House debate, and the house committee report to the effect that the Congress does not intend that this re-enactment of the portions of the Civil Aeronautics Act of 1938 shall constitute legislative adoption of administrative interpretations and practices or of judicial decisions under this act."

H. Rep. 2556, 85th Cong., 2d sess., p. 90 (1958).

18

53.   The provisions of the 1938 Act, as amended, that addressed the Administrator's authority to delegate to qualified private persons testing and inspection functions, were re-codified under Title II of the FAA Act. Section 314(a), Delegation to Private Persons, read as follows:

> "[i]n exercising the powers and duties vested in him by this Act, the Administrator may, subject to such regulations, supervision, and review as he may prescribe, delegate to any properly qualified private person, or to any employee or employees under the supervision of such person, any work, business, or function respecting (1) the examination, inspection, and testing necessary to the issuance of certificates under title VI of this Act, and (2) the issuance of such certificates in accordance with standards established by him. The Administrator may establish the maximum fees which such private persons may charge for their services and may rescind any delegation made by him pursuant to this subsection at any time and for any reason which he deems appropriate."

**The 1979 Administrative Rules and the Creation of 14 C.F.R. § 13.20**

54.   On March 19, 1979, the FAA published in the Federal Register, a Notice of Proposed Rulemaking titled Investigation and Enforcement Procedures (the "1979 NPRM"), that was summarized as follows:

> "To enable the FAA to carry out its enforcement responsibilities more effectively, this notice proposes rules and procedures for the filing of formal complaints, the issuance of certain orders of denial, cease and desist orders and orders of compliance, and the conduct of formal fact finding investigation under the Federal Aviation Act of 1958, the Airport and Airway Development Act of 1970, and the Hazardous Materials Transportation Act."

19

*Investigative and Enforcement Procedures: Procedures for Filing Complaints, Issuing Certain Orders and Conducting Formal Fact Finding Investigations*, 44 Fed. Reg. 16424 (Mar. 19, 1979).

55.     The 1979 NPRM discussed the FAA's existing enforcement process and expressly acknowledged due process considerations:

> "Implicit in the authority to issue regulations is the responsibility to enforce them. While compliance with the safety standards established under Title VI of the Federal Aviation Act continues to be the principal focus of the agency's enforcement program, that program today extends to requirements imposed by Titles III and V of that Act, the Hazardous Materials Transportation Act, and the Airport and Airway Development Act.
>
> The types of actions possible under these statutes are set out in present Part 13 of the Federal Aviation Regulations (FARs). They span a range from Warning Notices to summary aircraft seizure and substantial civil penalties.
>
> The procedure followed by the FAA is essentially that followed by any law enforcement agency vested with authority to take civil actions. Criminal sanctions are provided by statute for certain violations; however; these actions are undertaken by the Department of Justice. Except in the case of administrative actions taken as provided for in Subpart B of this part, an investigation is initiated to determine whether a basis exists for taking legal action. *Ordinarily, no final legal disposition within the meaning of the Administrative Procedure Act is taken without notice and an opportunity to be heard.* Important exceptions, however, are the provisions of sections 903 and 1005 of the Federal Aviation Act (49 U.S.C. 1473 and 1485) which allow for summary seizure of aircraft and emergency orders without prior notice or hearing.
>
> Although Subpart E of Part 13 sets forth procedures for the issuance of orders of compliance under the Hazardous Materials Transportation Act, it does not presently contain

procedures for the issuance of orders of compliance under the Federal Aviation Act of 1958 or the Airport and Airway Development Act of 1970. *Accordingly, § 13.20 would establish procedures for the issuance of orders of compliance with the provisions of those acts and any orders or regulations issued thereunder.*

The FAA also issues other orders which meet the "final disposition" test discussed above. Examples of these include orders to cease and desist, orders of denial, and orders under section 308(a) of the Federal Aviation Act of 1958 (49 U.S.C. 1349(a)). *Since no statutory provision for an "opportunity to be heard" exists for orders of this type (except for orders of denial of airman certificates issued under section 602 of the Federal Aviation Act), the potential exists for administratively final orders to be issued without basic "due process" protections. Equally important is the requirement imposed by section 1006 of the Federal Aviation Act (49 U.S.C. 1486) that such orders are subject to judicial review by the Courts of Appeals of the United States or the U.S. Court of Appeals for the District of Columbia. As a result, cases have arisen where the administrative record before these Courts is not sufficient to dispose of the matter properly. This notice therefore proposes to revise § 13.20 to provide notice and an opportunity for a hearing in accordance with Subpart D of this part.*

It also proposes to expand the provisions of this section to orders other than to cease and desist. The limited scope of present § 13.20, which is confined to emergencies under section (a) of the Federal Aviation Act (49 U.S.C. 1485(a)), is no longer a proper reflection of the range of administratively final orders issued by the FAA. Furthermore, the authority conferred by section 1005(a) is not available for proceedings arising under the Airport and Airway Development Act of 1970. The procedural steps for issuing orders under this section are substantially the same as those initiated through the complaint process of proposed § 13.11.

It should be noted that orders issued pursuant to sections 602 and 609 of the Federal Aviation Act (49 U.S.C. 1422 and 1429) are excluded. This is because those sections specifically provide for a review by or an appeal to the

21

> National Transportation Safety Board prior to judicial review under section 1006. These sections deal with the issuance of airman certificates (section 602) and the amendment, suspension, and revocation of various certificates issued by the FAA (section 609). The National Transportation Safety Board's rules of practice for such proceedings may be found in 49 CFR Part 821."

*Id.*, 16425. *Emphasis added.*

56. The 1979 NPRM, proposing the scope of 14 C.F.R. § 13.20, expressly acknowledged that due process at the administrative level was necessary for purposes of judicial review by the Circuit Courts of Appeal.

57. On November 5, 1979, the FAA published in the Federal Register a final rule codifying 14 C.F.R. § 13.20 ("1979 Final Rule"). *Procedures for Filing Complaints, Issuing Certain Orders and Conducting Formal Fact Finding Investigations*, 44 Fed. Reg. 63720 (Nov. 5, 1979)

58. The FAA summarized the 1979 Final Rule as follows:

> "The FAA amends its rules of practice in enforcement cases to provide a regulatory mechanism for the filing of formal complaints, and to prescribe enforcement procedures for the issuance of certain orders of denial, cease and desist orders and orders of compliance, *and the conduct of formal fact finding investigations under the Federal Aviation Act of 1958,* the Airport and Airway Development Act of 1970, and the Hazardous Materials Transportation Act."

*Emphasis added.*

59. The only final orders issued by the FAA excluded from 14 C.F.R. § 13.20 were those orders issued under §§ 602 and 609 of the FAA Act because those

sections already provided for review by or appeal to the National Transportation Safety Board prior to any subsequent judicial scrutiny.

60.    For reasons known only to the FAA, the FAA has asserted that DPEs, and designees generally, are not subject to 14 C.F.R. § 13.20. Rather, without legal support, aside from its internal interpretation of its own Rules, the FAA has asserted that "13.20 […] has nothing to do with the FAA's termination of Designated Pilot Examiners or, for that matter, any other category of non-FAA employees whom the agency certifies to perform particular functions. *Walter Bradshaw v. Federal Aviation Administration*, No. 18-1429, In the United States Court of Appeals for the Eleventh Circuit, Brief for the Respondent, p. 22, June 12, 2019.[4]

**The FAA's Current Administrative Construct and the Degeneration of Due Process Protections**

61.    The current iteration of the FAA's designee program is found in 49 U.S.C. subtitle VII, entitled Aviation Programs. 49 U.S.C. § 44702(a) generally grants authority to the FAA Administrator to issue multiple types of certificates required in the aviation industry, and states as follows:

> The Administrator of the Federal Aviation Administration may issue airman certificates, design organization certificates, type certificates, production certificates, airworthiness certificates, air carrier operating certificates,

---

[4] Notwithstanding the FAA's position with respect to the application of 14 C.F.R. § 13.20 to designees, the FAA, until recently, provided in its Orders it applied to designees, a procedure for termination and opportunity for appeal. *See* FAA Order 8900.1 (vol. 13, ch. 5, § 3), Termination and Appeal.

airport operating certificates, air agency certificates, and air navigation facility certificates under this chapter.

62. 49 U.S.C. § 44702(d)(1) further states:

Subject to regulations, supervision, and review, the Administrator may prescribe, the Administrator may delegate to a qualified private person, or to an employee under the supervision of that person, a matter related to—
(A) the examination, testing, and inspection necessary to issue a certificate under this chapter; and
(B) issuing the certificate….

63. 49 U.S.C. § 44702(d)(2) provides that "[t]he Administrator may rescind a delegation under this subsection at any time for any reason the Administrator considers appropriate," statutory language mirroring the language found in the 1938 Act.

64. 49 U.S.C. § 46110(c) provides for continuation of judicial scrutiny of a recission stating:

[. . .] the [circuit] court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary [. . .] to conduct further proceedings.

65. In light of established judicial scrutiny, the FAA acknowledged that it was required to provide DPEs some level of due process at the administrative level. Indeed, at all times since the enactment of 49 U.S.C. § 46110(c), the FAA had acquiesced to judicial scrutiny of recission of a DPE designation by the Circuit Courts pursuant to 49 U.S.C. § 46110(c), albeit with the scope of that judicial review, over time, pared down to a limited to review of the FAA's compliance with its own internal procedural due process related to then existing administrative appeal rights.

24

The FAA's acquiescence to judicial scrutiny was compelled by 14 CFR § 13.20's inclusion DPE termination orders.

66.    14 CFR § 13.20, titled "[o]rders of compliance, cease and desist orders, orders of denial, and other orders" was amended in or about 2021. Prior to its modification, which became effective on November 30, 2021, 14 C.F.R.§ 13.20(a) read as follow:

> "[t]his section applies to orders of compliance, cease and desist orders, orders of denial, and other orders issued by the Administrator to carry out the provisions of the Federal Aviation Act of 1958, as amended."

67.    Although 14 C.F.R.§ 13.20 provides a detailed rubic of due process generally governing FAA investigations and enforcement actions, the FAA did not apply those C.F.R. mandates to the DPEs but created a separate appeal process for DPEs in its own internal operating Orders, pursuant to the then existing level of administrative deference afforded to the FAA by the federal Courts. Nonetheless, those operating Orders anticipated a meaningful FAA appeal of a DPE's designation termination and also recognized previously described judicial scrutiny of the Circuit Courts pursuant to 49 U.S.C. § 46110(c).

68.    Prior to enactment of the 2021 amendments, on February 12, 2019, the FAA issued its Notice of Proposed Rulemaking, *Update to Investigative and Enforcement Procedures*, 84 Fed. Reg. 3614, 3615 (Feb. 12, 2019) (the "2019 Proposed Rulemaking"). The summary of the 2019 Proposed Rulemaking stated:

> The FAA proposes to revise the procedural rules governing Federal Aviation Administration investigations and

25

enforcement actions. The proposed revisions include updates to statutory and regulatory references, elimination of inconsistencies, clarification of ambiguity, increases in efficiency, and improved readability.

69. With respect to 14 C.F.R. § 13.20 specifically, the 2019 Proposed Rulemaking further stated that:

> Proposed § 13.20(a) would reorganize current § 13.20(a), update the statutory references to cite title 49, and make clear to which orders § 13.20 does and does not apply for purposes of providing FAA administrative hearings under subpart D. […]. Proposed § 13.20(a)(5) would serve as a catch-all for any other orders where administrative process can be but is not otherwise explicitly provided.

70. The FAA further stated that with respect to 14 C.F.R. § 13.20, the substantive changes that were proposed were regarding "unnecessary restatements of the Administrator's statutory authority to take legal enforcement action would be removed and new procedures would be added in § 13.20 to allow for an administrative appeal of emergency orders covered by that section."

71. When the FAA published its Final Rule (the "2019 Final Rule"), it rewrote §13.20 in a substantive manner that exceeded its self-created mandate as described in its 2019 Proposed Rulemaking.

72. As stated previously, prior to the issuance of the 2019 Final Rule, 14 C.F.R. § 13.20(a) read as follow:

> "[t]his section applies to orders of compliance, cease and desist orders, orders of denial, and other orders issued by the Administrator to carry out the provisions of the Federal Aviation Act of 1958, as amended."

26

73.    After the issuance of the 2019 Final Rule which became effective on

November 30, 2021, 14 C.F.R. §13.20 read as follows:

> § 13.20 Orders of compliance, cease and desist orders, orders of denial, and other orders.
>
> (a) General.  This section applies to all of the following:
>
> (1) Orders of compliance;
>
> (2) Cease and desist orders;
>
> (3) Orders of denial;
>
> (4) Orders suspending or revoking a certificate of registration (but not revocation of a certificate of registration because the aircraft was used to carry out or facilitate an activity punishable, under a law of the United States or a State related to a controlled substance (except a law related to simple possession of a controlled substance), by death or imprisonment for more than one year and the owner of the aircraft permitted the use of the aircraft knowing that the aircraft was to be used for the activity); and
>
> (5) Other orders issued by the Administrator to carry out the provisions of the Federal aviation statute codified at 49 U.S.C. subtitle VII that apply this section by statute, rule, regulation, or order, *or for which there is no specific administrative process provided by statute, rule, regulation, or order.*

*Emphasis added.*

74.    The FAA expressly acknowledged at the time of enactment of 14

C.F.R. §13.20 in 1979 that the due process provisions that 14 C.F.R. §13.20

contained were necessary to address and provide protections because the FAA Act

did not provide expressly for "an opportunity to be heard." The FAA then asserted that 14 C.F.R. §13.20 was not applicable, although it afforded some level of review.

75.     The 2021 modifications to 14 C.F.R. §13.20  constituted a radical and undisclosed effort by the FAA to finally eliminate, through administrative hubris, any remaining due process protections for the DPEs and designees in general.

### The Effect of the 2021 Amendment to  14 C.F.R. § 13.20

76.     The amendments to 14 C.F.R. § 13.20, which became effective on November 30, 2021, reclassified a range of FAA "orders" — including compliance, cease-and-desist, and denial orders — as final agency actions. This served to remove FAA orders previously within the purview of 14 C.F.R. §13.20 from its due process protections, and further judicial scrutiny, so long as the FAA had proclaimed another administrative *process* to control by an administrative order.

77.     Although the FAA had successfully argued that DPEs were not covered by 14 C.F.R. §13.20's due process protections, its internal Orders, driven by long-established judicial scrutiny, historically conceded some due process protection for DPEs  and recognized that termination of a DPE designation was subject to limited judicial review pursuant to 49 U.S.C. § 46110.

78.     However, the 2021 amendment eliminated these long established rights. This administrative slight of hand effectively wrote the DPEs out of 14 C.F.R. §13.20 for purposes of judicial review inasmuch as the language in section (a)(5) excluded

from judicial review administrative actions for which the FAA provided an "administrative process," including designee terminations.

79. Moreover, after the FAA surreptitious modification of the C.F.R., its operative order, FAA Order 8000.95D, eliminated the right to an administrative appeal, replacing it with an "ability to respond." Indeed, an FAA email dated January 27, 2025, produced pursuant to a public records request regarding DPE terminations, states as follows:

> "An SME researched your request and provided data obtained from the Designee Management System database.
>
> It's important to note that there was a policy change that removed the appeal process for terminations during the time period in question. An "ability to respond" was implemented in place of the former "appeal.""

80. The modification of Order 8000.95D is consistent with the position argued by counsel for the FAA at oral argument before the United States Court of Appeal for the Tenth Circuit in the case of *Wright-Smith v. FAA,* Case No. 23-9608 (10th Cir. 2024), on November 22, 2024, an action brought pursuant to 49 U.S.C. § 46110. In that case, counsel for the FAA asserted that stated "[. . .] I don't think there is any due process that attaches here. [. . .] I don't think the agency is required to provide any process."

81. By eliminating established procedural safeguards, the FAA has stripped DPEs of meaningful notice or opportunity to be heard before losing their

29

designations and livelihoods, despite decades of precedent and prior agency orders, and established jurisprudence that recognized the need for due process.

82.    Since the FAA's 2021 amendment to 14 C.F.R. § 13.20, and its implementation of the current iteration of Order 8000.95(D), the FAA has engaged in wholesale terminations of DPEs, without any due process, on the basis of age. Plaintiffs, and all of the terminated DPEs, are over the age of 40.

83.    As a result of the 2021 amendment and the modification of the internal practices, the FAA has allowed frequent and continuing constitutional violations in that the FAA has been allowing wide-spread discrimination on the basis of age.

### Liberty Interest Implications

84.    The FAA has terminated DPEs on the basis of false information that, when the falsity of the information is brought to the attention of FAA officials, is ignored.

85.    The FAA has terminated DPEs based upon anonymous complaints submitted to hotlines, not permitting the DPEs access to any knowledge of the person submitting the complaint or its details to protect "anonymity."

86.    Despite the FAA's own rules state that a designee may resign voluntarily, the FAA denies this request and terminates "for cause" with no investigation.

87.    DPEs are not terminated for "no cause," or "for any reason the Administrator deems appropriate" but are routinely terminated "for cause," even

where a "cause" is not articulated, creating a reckless reputational stigma for purposes of future employment.

88.     Termination "for cause" of an FAA designation, whether a pilot examiner, or other sort of FAA designee, has a  stigmatizing effect on the terminated designees' professional reputation as the "for cause" termination is published by the FAA on its Designee Management System. The termination "for cause" is an unspecific conclusory statement. According to the FAA's internal Orders, reasons for termination "for cause" include specification, performance deficiencies, lack of integrity, and misconduct.

89.     A DPE whose designation is terminated "for cause" is permanently ineligible to serve in multiple aviation related functions including Chief Examiner at Part 141 or Part 61 flight schools; Contract Examiner positions with FAA-approved testing centers or regional aviation authorities.

90.     A "for cause" termination creates an adverse presumption in background checks under the FAA's own hiring policies (e.g. FAA Order 8000.80), thus precluding DPEs from employment as Aviation Safety Inspectors and other similar FAA positions.

**Property Interest Implications**

91.     Over time, the FAA has asserted greater controls over the DPEs. Although, at one time, the FAA afforded DPEs great autonomy, relying upon the DPEs aviation experience and expertise, that is no longer the case.

92.    By and through the FAA's Designee Management System, the FAA has imposed strict controls over the DPEs' daily functions including requiring FAA permission for every examination that the DPE conducts and must provide to the FAA the start time and the location, and the FAA notifies the DPE when he/she can accept payment. The DPEs are treated by the FAA as defacto employees.

93.    The FAA has mandated that DPEs fly 60 hours a year as "pilot in command." This constitutes a large financial expense for DPEs. FAA-employee DPEs are not subject to this requirement.

94.    The FAA eliminated a prior requirement that DPEs have a full-time position in the aviation industry, as the DPE program was never intended to be a full-time position. The elimination of the prior employment has resulted in the FAA's increased reliance on the DPEs, with the DPEs conducting regularly approximately 500 check rides per year, and making the DPEs economically dependent upon the FAA.

95.    The FAA's imposition on responsibilities and restrictions on outside activities has occurred at the  same time that it has eliminated the DPEs due process protections.

96.    The threat of termination "for cause" based on anonymous complaints without due process or any recourse or redress has created a perverse incentive for DPEs to refrain from failing pilots. This has resulted in a decrease in DPE failures and an increase in safety issues, a result that is antithetical to the FAA's safety mantra.

## CAUSES OF ACTION

### Count I – Violation of the Administrative Procedure Act (5 U.S.C. § 706(2)(A),(C)) (1954 and 2021 Final Administrative Actions)

97. Plaintiffs hereby reincorporate paragraphs 1 – 96 of the Complaint.

98. The 1954 amendments constitute an abuse of discretion and are in violation of the APA as they were made effective without notice and without opportunity for comment and gave the Administrator unfettered discretion to terminate DPE designations.

99. The 2021 amendment to § 13.20 is arbitrary, capricious, and not in accordance with law because it eliminates hearing rights contrary to 49 U.S.C. § 44709 and decades of FAA practice.

100. The 2021 amendment exceeds the FAA's statutory authority under 49 U.S.C. §§ 44702(d) and 44709, violates the APA, and deprives Plaintiffs of due process and equal protection guaranteed by the Fifth Amendment. It is the arbitrary and capricious nature of the 2021 amendment and the subsequent administrative elimination of the right to an FAA appeal that has resulted in the tangible harms to the terminated DPEs.

101. The 2021 rule exceeds the FAA's statutory authority under 49 U.S.C. §§ 44702(d) and 44709, violates the APA, and deprives Plaintiffs of due process and equal protection guaranteed by the Fifth Amendment.

102. Because the FAA's propounding of the 1954 Regulations and the 2021 Amendments to 14 C.F.R. § 13.20 were in violation of the Administrative

33

Procedures Act, this Court should find that all termination for cause decisions issued by the FAA in the past six years to be vacated, null and void, and declare all such for cause terminations to be held to be terminations without cause.

<strong>Count II – Violation of the APA (Procedural Rulemaking, 5 U.S.C. § 553)</strong>

103. Plaintiffs hereby reincorporate paragraphs 1 – 96 of the Complaint.

104. The FAA failed to provide adequate notice or reasoned explanation in its 2019 NPRM that it would withdraw administrative review for DPE orders.

105. The FAA failed to provide notice and opportunity for comment in its 1954 proposed amendments that the effect would be an unwarranted expansion of the Administrator's authority. The 1954 amendments are an abuse of discretion and in violation of the APA as they were made effective without notice and without opportunity for comment.

<strong>Count III – Violation of the Fifth Amendment (Due Process)</strong>

106. Plaintiffs hereby reincorporate paragraphs 1 – 96 of the Complaint.

107. DPEs possess liberty and property interests in their professional designations; the FAA's policy of terminating or restricting those interests without notice or hearing violates procedural due process.

<strong>Count IV – Violation of the Fifth Amendment (Equal Protection)</strong>

108. Plaintiffs hereby reincorporate paragraphs 1 – 96 of the Complaint.

109. By affording administrative review to some designee classes (e.g., DERs, DMIRs) but not to DPEs, the FAA engages in irrational disparate treatment lacking any legitimate basis.

## Count I – Violation of the Fifth Amendment (Equal Protection)

110.    Plaintiffs herby incorporate paragraphs 1 – 96 of the Complaint.

111.    Plaintiffs are over the age of 40 and are members of a protected class.

112.    Plaintiffs were terminated because of their age and have been directly discriminated against.

113.    Similarly situated DPEs under the age  of 40 have not been summarily terminated, despite the fact that the FAA has stripped those DPEs of due process rights as well.

114.    No rationale basis exists for the FAA's termination of the Plaintiffs.

## Count V – Declaratory Judgment (28 U.S.C. § 2201)

115.    Plaintiffs hereby reincorporate paragraphs 1 – 96 of the Complaint.

116.    This request for Declaratory Judgment is brought pursuant to 28 U.S.C. § 2201.

117.    Plaintiffs, on their own behalf and all of the similarly situated terminated DPEs, is seeking declaratory and injunctive relief restoring fair-hearing rights and prohibiting the FAA from enforcing § 13.20 as amended until the agency provides constitutionally adequate review procedures.

118.    A judicial declaration is necessary to resolve the parties' rights and the validity of § 13.20 as applied to DPEs.

## PRAYER FOR RELIEF

35

**WHEREFORE**, Plaintiffs, Robert Lasky Joseph Puglia, on behalf of themselves and all others similarly situated, prays for relief pursuant to each Count set forth in the Complaint as follows:

1. For an order certifying that this action may be maintained as a class action, certifying Plaintiffs as representative of the Class, and designating his counsel as counsel for the class;

2. For specific performance, compensatory and punitive damages to be determined at trial;

3. For an award of costs; and

4. For any other relief the court might deem just, appropriate or proper.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Respectfully submitted this 17th day of March, 2026.

**JOHN D. WEBB, P.A.**

*s/ John D. Webb*
John D. "Jack" Webb
Florida Bar Number: 0051871
1662 Stockton Street, Ste. 201
Jacksonville, Florida 32204
Telephone: (904) 803-4686
Primary Email:
jwebb@jackwebblaw.com
Secondary Email:
arichey@jackwebblaw.com
jupton@jackwebblaw.com