# Exhibit "1"

Y4.In8⁴:C49⁵

# CIVIL AERONAUTICS ACT AMENDMENTS

# HEARINGS

### BEFORE A

## SUBCOMMITTEE OF THE COMMITTEE ON
## INTERSTATE AND FOREIGN COMMERCE
## HOUSE OF REPRESENTATIVES

### EIGHTY-FIRST CONGRESS
#### FIRST SESSION
##### ON

# H. R. 4082

A BILL TO IMPROVE THE ADMINISTRATION OF THE CIVIL
AERONAUTICS ACT OF 1938, AND FOR OTHER PURPOSES

# H. R. 2911

A BILL TO AMEND THE CIVIL AERONAUTICS ACT OF 1938,
TO PROVIDE FOR THE ECONOMIC REGULATION OF AIR
CARRIERS ENGAGED IN FOREIGN AIR TRANSPORTATION,
AND FOR OTHER PURPOSES

# H. R. 3940

A BILL TO AMEND THE CIVIL AERONAUTICS ACT OF 1938,
AS AMENDED, TO REGULATE THE TRANSPORTATION, PACK-
ING, MARKING, AND DESCRIPTION OF EXPLOSIVES AND
OTHER DANGEROUS ARTICLES

----

MAY 5, 10, 11, 12, AND 20, 1949

----

Printed for the use of the Committee on
Interstate and Foreign Commerce



UNITED STATES
GOVERNMENT PRINTING OFFICE
91730                WASHINGTON : 1949

Generated through HathiTrust on 2026-03-17 16:36 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA



## COMMITTEE ON INTERSTATE AND FOREIGN COMMERCE

ROBERT CROSSER, Ohio, *Chairman*

ALFRED L. BULWINKLE, North Carolina
LINDLEY BECKWORTH, Texas
J. PERCY PRIEST, Tennessee
OREN HARRIS, Arkansas
GEORGE G. SADOWSKI, Michigan
DWIGHT L. ROGERS, Florida
EUGENE J. KEOGH, New York
ARTHUR G. KLEIN, New York
THOMAS B. STANLEY, Virginia
JOHN B. SULLIVAN, Missouri
WILLIAM T. GRANAHAN, Pennsylvania
ANDREW J. BIEMILLER, Wisconsin
JOHN A. McGUIRE, Connecticut
GEORGE H. WILSON, Oklahoma
NEIL J. LINEHAN, Illinois
THOMAS R. UNDERWOOD, Kentucky

CHARLES A. WOLVERTON, New Jersey
CARL HINSHAW, California
LEONARD W. HALL, New York
JOSEPH P. O'HARA, Minnesota
WILSON D. GILLETTE, Pennsylvania
ROBERT HALE, Maine
HARRIS ELLSWORTH, Oregon
JAMES I. DOLLIVER, Iowa
JOHN W. HESELTON, Massachusetts
HUGH D. SCOTT, Jr., Pennsylvania
JOHN B. BENNETT, Michigan

ELTON J. LAYTON, *Clerk*
G. RICHARD WARD, *Assistant Clerk*

---

## SUBCOMMITTEE ON TRANSPORTATION

LINDLEY BECKWORTH, Texas, *Chairman*

OREN HARRIS, Arkansas
DWIGHT L. ROGERS, Florida
ARTHUR G. KLEIN, New York
JOHN B. SULLIVAN, Missouri
JOHN A. McGUIRE, Connecticut

CHARLES A. WOLVERTON, New Jersey
CARL HINSHAW, California
LEONARD W. HALL, New York
JOSEPH P. O'HARA, Minnesota

II

Generated through HathiTrust on 2026-03-17 16:37 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

# CONTENTS

| | Page |
|---|---|
| H. R. 4082: | |
| Text of | 1 |
| Report of Commerce Department | 2 |
| Statement of— | |
|     Nunneley, Emory T., Jr., general counsel, Civil Aeronautics Board | 2 |
|     Tipton, Stuart G., general counsel, Air Transport Association of America | 17 |
| Additional material submitted for the record by— | |
|     Civil Aeronautics Board, statement of | 6 |
| H. R. 2911: | |
| Text of | 21 |
| Report of— | |
|     Air Force Department | 25 |
|     Civil Aeronautics Board | 22 |
|     Commerce Department | 25 |
|     Justice Department | 24 |
|     State Department | 23 |
|     Treasury Department | 23 |
| Statement of— | |
|     Adams, Russell B., member, Civil Aeronautics Board | 27 |
|     Barringer, J. Paul, deputy director, Office of Transport and Communications, Department of State | 59 |
|     Kennedy, Hon. John F., a Representative in Congress from the State of Massachusetts | 80 |
|     Marvin, Langdon P., Jr., former chairman, Interdepartmental Air Cargo Priorities Committee | 92 |
|     Sullivan, Verne, secretary, Committee on International Transport, Chamber of Commerce of the United States | 97 |
|     Taylor, T. K., assistant to the chairman of the board, Trans World Airlines | 85 |
| Additional material submitted for the record by— | |
|     Colonial Airlines, Inc., letter from | 103 |
| H. R. 3940: | |
| Text of | 105 |
| Report of— | |
|     Commerce Department | 106 |
|     Justice Department | 105 |
| Statement of— | |
|     Calkins, Nathan, Jr., chief, International and Rules Division, Civil Aeronautics Board | 107 |
|     Markham, D. W., assistant general counsel, Air Transport Association of America | 117 |
|     Quinn, John J., chief, Rules Section, Bureau of Safety Regulations, Civil Aeronautics Board | 113 |

III

1345193

Generated through HathiTrust on 2026-03-17 16:37 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

Generated through HathiTrust on 2026-03-17 16:37 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

# CIVIL AERONAUTICS ACT AMENDMENTS

## THURSDAY, MAY 5, 1949

HOUSE OF REPRESENTATIVES,
SUBCOMMITTEE OF THE COMMITTEE ON
INTERSTATE AND FOREIGN COMMERCE,
*Washington, D. C.*

The subcommittee met, pursuant to call, at 10 : 10 a. m., in room 1334, New House Office Building, Hon. Lindley Beckworth (chairman of the subcommittee) presiding.

Mr. BECKWORTH. The committee will come to order.

The purpose of the meeting this morning is to consider a bill, **H. R. 4082,** which I introduced at the request of the Civil Aeronautics Board. The bill is to improve the administration of the Civil Aeronautics Act of 1938 and for other purposes.

(H. R. 4082 is as follows:)

[H. R. 4082, 81st Cong., 1st sess.]

**A BILL To improve the administration of the Civil Aeronautics Act of 1938, and for other purposes**

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 1001 of the Civil Aeronautics Act of 1938, as amended, is hereby further amended by adding after the word "Proceedings" in the heading in a semicolon and the words "Assignment of Functions"; by inserting after such heading a subheading as follows: "Proceedings of the Board"; by inserting "(a)" after 1001; by striking out the word "may" in the first sentence and inserting in lieu thereof the word "shall"; and by adding at the end of such section a new subsection as follows:

"Assignment of Work, Business, or Functions

"(b) (1) The Board may direct that any of its work, business, or functions under any provision of this Act (except final orders predicated upon notice and hearing under sections 401 (d), 401 (h), 401 (i), 401 (k), 401 (n), 402 (b), 402 (g), 402 (h), 406 (a), 1002 (d), 1002 (f), 1002 (g), 1002 (h), 1003, and this subsection) be assigned to an individual member or members of the Board, or to an eligible employee or employees of the Board designated by such order for action thereon. The Board may by order at any time amend, modify, supplement, or rescind any assignment.

"(2) Eligible employees for purposes of this subsection shall include the general counsel, the Secretary, any bureau director, any division or section chief, and any employee having responsibilities.of comparable importance. When any member or any employee is unable to act upon any matter so assigned because of absence or other cause, the Chairman of the Board may designate another member or employee, as the case may be, to serve temporarily until the Board otherwise orders.

"(3) Individuals to whom assignments are so made shall have authority to perform the work, business, or functions assigned to them under this subsection and for such purpose shall have all the jurisdiction and powers conferred by this Act upon the Board. and be subject to the same duties and obligations. The Secretary and seal of the Board shall be the Secretary and the seal of each such individual. Except as otherwise provided in this subsection (b), any order or

1

Generated through HathiTrust on 2026-03-17 16:37 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

2          CIVIL AERONAUTICS ACT AMENDMENTS

other action of any such individual or individuals with respect to any matter assigned to him or them shall have the same force and effect and may be made, evidenced, and enforced, and shall be subject to judicial review, in the same manner as if taken by the Board.

"(4) Any party affected by an order or other action taken by any such individual or individuals with respect to any matter assigned to him or them under this subsection may apply for consideration by the Board of such order or other action, subject to such reasonable limitations as may be established by the Board. Such application shall be passed upon by the Board, and the Board may grant such application and reconsider such order or other action if it has reason to believe that such order or other action was issued or taken in error. The Board, upon its own initiative, may reconsider the order or other action of such individual or individuals either before or after it has become effective. If upon reconsideration by the Board it shall appear that the order or other action in question is in any respect unjust or unwarranted, the Board shall reverse, change, or modify the same accordingly; otherwise the Board shall affirm such order or other action. The making of such an application for reconsideration shall not excuse any person from complying with or obeying the order or other action or operate to stay or postpone the enforcement thereof unless the Board shall otherwise have provided by rule or order."

Mr. BECKWORTH. Without objection we will insert the report of the Commerce Department at this point in the record.

(The report is as follows:)

THE SECRETARY OF COMMERCE,
*Washington 25.*

Hon. ROBERT CROSSER,
*Chairman, Committee on Interstate and Foreign Commerce,*
*House of Representatives, Washington, D. C.*

DEAR MR. CHAIRMAN: This is in reply to the recent letter from your committee requesting comments on the bill H. R. 4082, a bill to improve the administration of the Civil Aeronautics Act of 1938, and for other purposes.

This bill would amend the Civil Aeronautics Act of 1938 to allow the Civil Aeronautics Board to assign certain work, business, or functions (except those dealing with air carriers economic regulation and procedure) to individual Board members or certain eligible employees.

H. R. 4082 relates only to the internal operation of the Civil Aeronautics Board and therefore, does not directly affect the Department of Commerce. We understand that it was introduced on behalf of the Civil Aeronautics Board and is designed to improve the administration of that agency by authorizing appropriate delegations.

In our judgment, H. R. 4082 is a sound bill and we recommend its enactment.

I have been advised by the Bureau of the Budget that there is no objection to the submission of this report to the committee.

Sincerely yours,

C. U. WHITNEY,
*Acting Secretary of Commerce.*

Mr. BECKWORTH. The first witness we have this morning is Mr. Nunneley, the chief counsel of the Civil Aeronautics Board. Mr. Nunneley.

## STATEMENT OF EMORY T. NUNNELEY, JR., GENERAL COUNSEL, CIVIL AERONAUTICS BOARD

Mr. NUNNELEY. Thank you, Mr. Chairman.

Mr. BECKWORTH. Mr. Nunneley, some of our members cannot be here all along. Your statement is not too long, but if you summarize it and make it even shorter, as you desire, it would be beneficial of those who cannot be here the full time.

Mr. NUNNELEY. I think there are a couple of points at least where I can summarize it subject to any questions that this committee may have.

Generated through HathiTrust on 2026-03-17 16:37 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

My name is Emory T. Nunneley, Jr. I am general counsel of the Civil Aeronautics Board.

I am happy to have this opportunity to appear before this subcommittee to discuss the provisions of H. R. 4082 and to give the committee the benefit of the views of the Board on this proposed legislation.

In its broad aspects, the bill would improve the administration of the Civil Aeronautics Act by specifying clearly and in detail the procedures to be followed by the Board in delegating authority to individual Board members and to eligible members of its staff. The Board is wholeheartedly in favor of this legislation and believes that it will have a most beneficial effect on carrying out our day-to-day work. So far as the Board is aware, this measure is completely noncontroversial, and therefore strongly recommends favorable consideration by this committee.

With your permission I will depart from my prepared statement, if it may be incorporated in the record, and I will summarize as I go.

The basic problem is simply that there is no express provision in the act authorizing the Board to delegate functions to its staff. There are cases which indicate that the courts may permit us to imply that power, but the present situation leaves an area of uncertainty which it would be most helpful to have cleared up. That is true not only in the Board's standpoint, but also from the standpoint of those who are affected by actions of the Board which are taken by delegated authority. And in order that such persons may be certain that their actions are not collaterally attacked as having been based on Board actions improperly taken pursuant to delegated authority, it would be most useful to have a definite expression of the Board's authority to delegate.

We have, I may say, already undertaken a measure of delegation to the staff, and we hope that it is legal, although there is no case clearly in point which sustains that action. The certainty which this would provide is the thing which we are seeking.

The necessity for the delegation and the reason for its desirability are three: First, the number of items which the Board must pass on is so great that personal consideration by each Board member of every matter requiring discretionary action is impossible of attainment. During the past 12 months the Board has ratified a total of 1,686 different formal actions taken by individual Board and staff members. It would be obviously impossible for the Board to master and consider all the facts in each of these matters, much less have the time for intelligent decision thereon.

Secondly, the Board believes a certain amount of delegation of authority in discretionary matters to be desirable since it leaves Board members free for major considerations of policy. Even if the members had sufficient time to consider all the various minor matters which must be passed upon, the mass of small details would so occupy their minds that there would be little room for the more important policy considerations.

The third respect in which the Board believes that delegation of authority is vital is in areas where expedited action is necessary from the point of view of the carrier or other applicant making the request. An example of such a case is where a tariff must be modified because of a change in circumstances which the carrier could not foresee or control. Some amendments of this nature are of the utmost urgency.

Generated through HathiTrust on 2026-03-17 16:37 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by

Original from
UNIVERSITY OF MINNESOTA

4                CIVIL AERONAUTICS ACT AMENDMENTS

The changes, which may be of great importance to the persons immediately involved, although of minor importance from the viewpoint of the Board's general regulatory power, cannot under the Civil Aeronautics Act be made upon less than 30 days' notice unless the Board grants permission. If it were necessary in every such case to have the Board itself decide the matter, there is great possibility that substantial damage might be caused to the applicant because of the physical inability of the Board to act in time.

Accordingly, the Board is of the opinion that it would be administratively impossible to conduct its business properly without a substantial amount of delegation to staff members.

Now, if I may turn to an analysis of the provisions of the bill, I will try to make that as brief as I can.

The bill would add a new subsection (b) to section 1001 of the act. The first numbered paragraph of the proposed subsection specifically grants the Board authority to direct that any of its work, business, or functions under any provision of the Civil Aeronautics Act may be assigned to any individual member or members of the Board or to an eligible employee or employees of the Board designated by order for such action.

Excepted from the general provisions of paragraph (1) are final orders predicated upon notice and hearing under certain sections of the act, which relate to the issuance, modification, suspension, revocation, or approval of transfer of a certificate of convenience and necessity, the approval or abandonment of a route, the issuance, modification, suspension, revocation, or approval of transfer of foreign air-carrier permits, the fixing of mail rates under section 406 (a) of the act and the prescription of rates and practices in passenger and property transportation.

It is to be noted that this paragraph already incorporates the recommendation made by the Board in respect to Senate bill S. 448, which is substantially the same as H. R. 4082. The differences between the House bill and the Senate bill are twofold: First, the parenthetical material has been clarified in the House bill so as to indicate that it is only the issuance of final orders predicated upon notice and hearing under the exempted sections which may not be delegated. Certain other functions which are more or less ministerial in nature are also included in the Civil Aeronautics Act in the sections referred to in the bill. These functions do not, in the Board's opinion, require initial action by all five members as a Board.

The second difference, which I won't go into at length, but which is covered in my prepared statement, is that the Senate bill contains a provision which provides that delegation may not be made pursuant to section 8 of the Administrative Procedure Act in the matters relating to rates and routes. We would urge that the House version of the bill which does not contain that overriding of the Administrative Procedure Act, be retained. That means simply this, that under the Administrative Procedure Act we are authorized to have our examiners issue initial decisions which, if they are not appealed from, become the final order of the Board. There is of course the right to appeal, and in that event the Board must review the matter. Consequently, we urge that there is no need to change the Administrative Procedure Act in that respect, and in fact there are some situations wherein we think

Generated through HathiTrust on 2026-03-17 16:37 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

it would be very useful to have the power to delegate the power of initial decision to the Board's examiners.

Continuing with the second paragraph on page 8 of my prepared statement: Except for the areas in which delegation of authority is specifically prescribed, the proposed new paragraph (b) (1) will enable the Board by general regulation or specific order to delegate its functions to individual members of the Board and eligible employees.

Similarly, the Board may at any time amend, modify, supplement, or rescind any such assignment. The bill also defines specifically what employees are considered eligible to act pursuant to the delegated authority. These include the general counsel, the Secretary, any bureau director, any division or section chief, and any employee having responsibilities of similar importance.

Moreover, this paragraph provides that machinery for designation of alternates in the event the employee designated is unable to act because of the absence or other cause. While this section would limit the possibility of subdelegation by eligible employees to subordinates in cases where discretionary decisions are called for, it is understood that it is not intended in any way to limit the ministerial actions which may be taken by subordinates even though they may not be "eligible" within the meaning of this section.

Paragraph 3 of the proposed new subsection constitutes a specific grant of power to individuals who may be so designated and gives them all the power of the Board and the action taken by them is the same as though it were taken by the Board.

Paragraph 4 of subsection (b) provides for a review by the Board itself of any action taken by an individual pursuant to delegated authority, upon application by any party affected. It sets forth the procedures which are to be followed and requires the Board to act upon applications for review either by affirming the order if it does not appear that it is in any respect unjust or unwarranted, or to reverse, change, or modify the order if that appears desirable. It is understood by this that the Board on application for review may examine the whole question de novo and not merely the specific objections raised by the application.

Paragraph 4 further provides that the making of an application for reconsideration by the Board shall not excuse any person from complying with or obeying the order nor shall it operate to stay or postpone the enforcement of the order unless the Board shall otherwise provide.

Although not so specifically stated in the bill, the Board construes the delegations of authority provided for in H. R. 4082 as constituting delegations of final authority within the meaning of section (3) (a) of the Administrative Procedure Act. Any such delegation of authority would be published in the Federal Register in accordance with the terms of that act.

Before closing my testimony, I would like to suggest to the committee a minor change in the wording of the bill which is essential for the purpose of clarifying the language of the bill, in our opinion. At lines 10 and 11 on page 2 the words "such order" and "by order" respectively, are contained in the present bill. It is recommended that these words be eliminated in order not to create an unfounded impression that delegation may only be created by order.

Generated through HathiTrust on 2026-03-17 16:38 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

6    CIVIL AERONAUTICS ACT AMENDMENTS

Under section 1005 (f) of the act every order of the Board must set forth the findings of fact upon which it is based. This seems plainly inappropriate for an action creating a delegation of authority, and is not required in H. R. 780, which deals with the Administrator's power to delegate. By eliminating these words as suggested, the Board would remain free to delegate its authority by any appropriate form of formal action, and as indicated before, these delegations would be published in the Federal Register.

It may also be in order to point out to the committee that the proposal set forth in H. R. 4082 contains nothing novel in the field of administrative procedure. Provisions of similar effect are already granted to the Federal Communications Commission and the Interstate Commerce Commission as an aid to the expeditious disposal of their work. It is my understanding that H. R. 4082 has been drafted using the afore-mentioned acts as models and borrowing from them where appropriate.

Although the Bureau of the Budget has indicated that it has no objection to the position of the Board taken herein, there has been insufficient time to clear this statement with that Bureau. As soon as advice is received from the Bureau of the Budget as to its relationship to the program of the President, a supplemental advice will be forwarded to the committee.

In conclusion, the Board desires to reiterate that the enactment of H. R. 4082 should definitely expedite the work of the Board and provide a basis for a sounder and more clear-cut administration of the act. It will do away with the necessity for ratification of staff action and will make it clear to all persons having business with the Board the specific manner in which the action has been taken.

(Mr. Nunneley's prepared statement is as follows:)

### STATEMENT OF THE CIVIL AERONAUTICS BOARD RELATIVE TO ITS CONSIDERATION OF H. R. 4082

Mr. Chairman, I am very happy to appear before this subcommittee to discuss the provisions of H. R. 4082 and to give the committee the benefit of the views of the Civil Aeronautics Board on this proposed legislation. In its broad aspects, the bill would improve the administration of the Civil Aeronautics Act by specifying clearly and in detail the procedures to be followed by the Board in delegating authority to individual Board members and to eligible members of its staff. The Board is wholeheartedly in favor of this legislation and believes that it will have a most beneficial effect on carrying out our day-to-day work. So far as the Board is aware, this measure is completely noncontroversial, and therefore strongly recommends favorable consideration by this committee.

#### THE PROBLEM

The problem which H. R. 4082 was designed to cure is basically one of uncertainty—uncertainty in the internal administration of the Civil Aeronautics Act. It is an uncertainty which requires the expenditure of time of members of the Board and its staff alike. It arises in the following manner:

Under the provisions of the Civil Aeronautics Act of 1938 there was created a five member Civil Aeronautics Authority (renamed the Board by Reorganization Plan No. IV). It is clear under the act's definitions as well as the provisions of title II—relating to the organization of the authority—that whenever this word is used in the act it refers only to the 5-man Board and does not include its staff. Nor does it include individual Board members.

In its substantive provisions, the act requires the Board to take action in a myriad of regulatory activities of different types. Since there is no expressed power in the act at the present time permitting the Board to delegate authority to individual members of the Board or to its staff, a literal reading of the act

Generated through HathiTrust on 2026-03-17 16:38 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

would, therefore, indicate that Board members themselves must pass upon every item in the host of matters coming before it.

Such a literal interpretation, of course, has been rejected by the courts in cases involving legislation similar to ours. In general, it may be said the courts hold that delegations of authority are permissible where the functions delegated are merely ministerial in nature, whereas functions requiring agency discretion may not be delegated. Even this rule, however, still requires an unmanageably large number of decisions to be made by the regulatory agency, and of late years the courts have been extending the implied power to delegate functions in an ever-increasing amount.

Despite the tendency of the courts to interpret liberally the provisions of an act such as the Civil Aeronautics Act, so as to permit widespread delegations of authority, the situation is nevertheless uncertain because there is no ready guide for an agency to follow in the matters which may be delegated and those which may not. In each new area where delegation is desirable, a study must be undertaken to determine whether or not such a delegation would have a reasonable chance of standing up under court review.

Moreover, in the case of the Board, it has been felt necessary to create an elaborate process of ratification as a safeguard to the validity of the actions taken by staff members on its behalf. Apart from the additional safeguard involved, this ratification process serves no useful purpose and takes the time of Board members which might more profitably be spent on other things.

The uncertainty implicit in the present situation is of concern not only to the Board. The air carriers and other members of the public who are affected by Board actions may also be placed in a situation of uncertainty. There is no statutory procedure for appealing actions taken pursuant to delegated authority to the full Board, although its existing delegations of authority do make provision for Board review upon request.

Moreover, the validity of delegations of authority may be put in issue in matters wholly collateral to those of direct concern of the Board. This is an area where a carrier or other person affected by a Board order or regulation might act in good faith upon the order or regulation, only to find in a suit for damages instituted by a third person that it was invalid because it was promulgated pursuant to improperly delegated authority.

### NECESSITY FOR DELEGATION

My comments up to this point have been based on the assumption that delegations of authority in many areas are both necessary and desirable. Three reasons have impelled the Board to this conclusion. First, the number of items which it must pass on is so great that personal consideration by each Board member of every matter requiring discretionary action is impossible of attainment. During the past 12 months the Board has ratified a total of 1,686 different actions taken by individual Board and staff members. It would be obviously impossible for the Board to master and consider all the facts in each of these matters, much less have time for any intelligent decision thereon.

Secondly, the Board believes a certain amount of delegation of authority in discretionary matters to be desirable since it leaves Board members free for major considerations of policy. Even if the members had sufficient time to consider all the various minor matters which must be passed upon, the mass of small details would so occupy their minds that there would be little room for the more important policy decisions.

The third respect in which the Board believes that delegation of authority is vital is in areas where expedited action is necessary from the point of view of the carrier or other applicant making the request. An example of such a case is where a tariff must be modified because of a change in circumstances which the carrier could no foresee or control. Some amendments of this nature are of the utmost urgency. The changes, which may be of great importance to the persons immediately involved, although of minor importance from the viewpoint of the Board's general regulatory power, cannot under the Civil Aeronautics Act be made upon less than 30 days' notice unless the Board acts. If it were necessary in every such case to have the Board decide the matter, there is great possibility that substantial damage might be caused to the applicant because of physical inability on the part of the Board to act in time.

Accordingly, the Board is of the opinion that it would be administratively impossible to conduct its business properly without a substantial amount of delegation to staff members.

Generated through HathiTrust on 2026-03-17 16:38 GMT
https://hdl.handle.net/2027/umn.31951d00351833336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

8                    CIVIL AERONAUTICS ACT AMENDMENTS

SECTION BY SECTION ANALYSIS OF THE BILL

Not only is the Board fully in accord with the basic purpose of the bill, but it believes that its provisions admirably meet the requirements outlined above. The bill would add a new subsection (b) to section 1001 of the existing Civil Aeronautics Act. The first numbered paragraph of the proposed subsection specifically grants the Board authority to direct that any of its work, business or functions under any provision of the Civil Aeronautics Act may be assigned to an individual member or members of the Board or to an eligible employee or employees of the Board designated by such order for action.

Excepted from the general provisions of paragraph (1) are final orders predicated upon notice and hearing under certain sections of the act, which relate to the issuance, modification, suspension, revocation, or approval of transfer of a certificate of convenience and necessity; the approval of abandonment of a route; the issuance, modification, suspension, revocation, approval of transfer of **foreign air carrier permits; the fixing of mail rates under section 406 (a) of the** act, and the prescription of rates and practices in passenger and property transportation.

It is to be noted that this paragraph incorporates the recommendation made by the Board in respect to Senate bill 448, which is substantially the same as H. R. 4082. The differences between the House bill and the Senate bill are twofold—first, the parenthetical material has been clarified in the House bill so as to indicate that it is only the issuance of final orders predicated upon notice and hearing under the exempted sections which may not be delegated. Certain other functions which are more or less ministerial in nature are also included in the Civil Aeronautics Act in the sections referred to in the bill. These functions do not, in the Board's opinion, require initial action by all five members as a Board.

A second point of difference between the Senate and House bills is that the Senate bill contains a provision overriding the Administrative Procedure Act. With respect to this provision, the Board had this to say in its report to the Senate Committee on Interstate and Foreign Commerce:

"The further exception, however—that the power of delegation should not extend to functions relating to the issuance, suspension, or revocation of certificates of public convenience and necessity, or to the determination, review, and suspension of air-mail and other rates—is not merely a saving clause which would leave these areas unaffected by the delegation provision. It is, on the contrary, a prohibition against doing something which is presently authorized under section 8 of the Administrative Procedure Act. On the whole, this is a matter which the Board believes should be left as it stands and not made the subject of further statutory treatment.

"Under section 8 of the Administrative Procedure Act, the Board may permit its examiners to make the initial decision in a proceeding which, in the absence of an appeal to, or review upon motion of, the Board, will become the Board's decision. In the past the Board has followed the practice of itself making the initial decision in route and rate cases, and the function of the hearing examiner has been limited to the making of a recommended decision.

"Thus, up to the present time the Board has not availed itself of the provision of the Administrative Procedure Act providing for delegation of decisions in route and rate cases. However, it is possible that types of cases may arise which, even though involving routes or rates, could, under appropriate safeguards and standards prescribed by the Board, be entrusted to an examiner for initial decision under section 8 of the Administrative Procedure Act. For example, a petition for the dual designation of a point in a certificate might will be regarded as appropriate for reference to an examiner for initial decision. As the law now stands, this may be done under section 8 of the Administrative Procedure Act, and if within the time prescribed parties do not appeal and the Board on its own motion does not call for a review, the decision would become the decision of the Board. S. 448, as now drafted, would prohibit such procedures. We believe it would be more in accordance with the purposes of the bill and the desirable objectives to be obtained to permit the authority granted under section 8 of the Administrative Procedure Act to remain undisturbed.

"Section 12 of the Administrative Procedure Act expressly provides that no subsequent legislation shall be held to supersede or modify the provisions of that act except to the extent that such legislation shall do so expressly. In view of this provision in the Administrative Procedure Act, it would appear necessary to do no more than to eliminate the second sentence of the proposed section 1001

Generated through HathiTrust on 2026-03-17 16:38 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google          Original from
UNIVERSITY OF MINNESOTA

(b) (1) of the bill so that there would be no express modification of section 8 of the Administrative Procedure Act."

Except for the areas in which delegation of authority is specifically prescribed, the proposed new paragraph (b) (1) will enable the Board, by general regulation or specific order, to delegate its functions to individual members of the Board and eligible employees. Similarly, the Board may at any time amend, modify, supplement, or rescind any such assignment. It also defines specifically what employees are considered eligible to act pursuant to delegated authority. These include the general counsel, the secretary, any bureau director, any division or section chief, and any employee having responsibilities of similar importance.

Moreover, this paragraph provides machinery for designation of alternates in the event the employee designated is unable to act because of absence or other cause. While this section would limit the possibility of subdelegation by eligible employees to subordinates in cases where discretionary decisions are called for, it is understood that it is not intended in any way to limit the ministerial actions which may be taken by subordinates, even though they may not be "eligible" within the meaning of this section.

Paragraph (3) of the proposed new subsection constitutes a specific grant of power to individuals who may be so designated, gives them all the jurisdiction and power conferred by the Civil Aeronautics Act upon the Board, and subjects them to the same duties and obligations. It further provides that the Secretary and the seal of the Board shall serve as the Secretary and the seal of each such individual. Moreover, it provides that any action taken by any such individual, except as otherwise provided in the new subsection, shall have the same force and effect as if the action had been taken by the Board.

Paragraph (4) of subsection (b) provides for a review by the Board itself of any action taken by an individual pursuant to delegated authority, upon application by any party affected. It sets forth the procedures which are to be followed and requires the Board to act upon an application for review either by affirming the order if it does not appear that it is in any respect unjust or unwarranted, or to reverse, change, or modify the order if that appears desirable. It is understood by this that the Board on application for review may examine the whole question de novo and not merely the specific objection raised by the application.

Paragraph (4) further provides that the making of an application for reconsideration by the Board shall not excuse any person from complying with or obeying the order nor shall it operate to stay or postpone the enforcement of the order unless the Board shall otherwise provide.

Although not so specifically stated in the bill, the Board construes the delegations of authority provided for in H. R. 4082 as constituting delegations of final authority within the meaning of section (3) (a) of the Administrative Procedure Act. Any such delegation of authority would be published in the Federal Register in accordance with the terms of that act.

Before closing my testimony on this bill I should like to suggest to the committee a minor change in wording which is essential for the purpose of clarifying the language in the bill. At lines 10 and 11 on page 2 the words "such order" and "by order," respectively, are contained in the present bill. It is recommended that these words be eliminated in order not to create an unfounded impression that delegation may only be created by order. Under section 1005 (f) of the act every order of the Board must set forth the findings of fact upon which it is based. This is plainly inappropriate for an action creating a delegation of authority, and is not required in H. R. 780, the Administrator's power to delegate. By eliminating these words as suggested, the Board would remain free to delegate its authority by any form of formal action, and as indicated before, these delegations would be published in the Federal Register.

It may also be in order to point out to the committee that the proposal set forth in H. R. 4082 contains nothing novel in the field of administrative procedure. Provisions of similar effect are already granted to the Federal Communications Commission and the Interstate Commerce Commission as an aid in the expeditious disposal of their work. It is my understanding that H. R. 4082 has been drafted using the aforementioned acts as models and borrowing from them where appropriate.

Although the Bureau of the Budget has indicated that it has no objection to the position of the Board taken herein, there has been insufficient time to clear this statement with that Bureau. As soon as advice is received from the Bureau of the Budget as to its relationship to the program of the President a supplementary advice will be forwarded to the committee.

Generated through HathiTrust on 2026-03-17 16:38 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

**10**        CIVIL AERONAUTICS ACT AMENDMENTS

In conclusion, the Board desires to reiterate that the enactment of H. R. 4082 should definitely expedite the work of the Board and provide a basis for a sounder and more clear-cut administration of the act. It will do away with the necessity for ratification of staff action and will make it clear to all persons having business with the Board the specific manner in which the action has been taken.

Mr. BECKWORTH. Are there questions?

Mr. HINSHAW. In line 23, page 3, Mr. Nunneley, do you have any objection to inserting the words "in error or" after the word "respect", or words to that effect? In other words you have only "unjust or unwarranted."

Mr. NUNNELEY. I didn't get your suggestion.

Mr. HINSHAW. I do not quite understand the term. It might be an order that is in error.

Mr. NUNNELEY. I didn't understand what your insertion was, Mr. Congressman, but certainly, as I said before, it is our understanding that the Board would be entitled to review the order and to change it if it found that it differed with the action which had been taken under delegated authority. I believe that Mr. Tipton is going to offer one minor change in lines 17 to 19 which is directed in that same direction, to which we would have no objection.

Mr. HINSHAW. I just want to be sure that you do not have any arbitrary ruling on the part of any employee of the Board.

Mr. BECKWORTH. What change did you suggest?

Mr. NUNNELEY. I don't think this gives you any problem. The ICC has this same language. No occasion that I am aware of has ever arisen where that language caused any problem with them. There are no annotations, certainly, under that section of the act, and so far as we were able to ascertain, it has been a perfectly satisfactory provision with them.

Mr. HINSHAW. You say, "route and rate cases are not included in this delegation of power"?

Mr. NUNNELEY. Under this delegation, final action in route and rate cases is not included.

Mr. HINSHAW. I would not want to see the Board take the position that an employee could decide or even make preliminary decision in route and rate cases.

Mr. NUNNELEY. Under this language as it now appears, the Board would have the power, which it has under the Administrative Procedure Act, to authorize its examiners to make initial decisions, as provided for in that act. Initial decisions differ from recommended decisions in that they become final automatically unless there is an appeal from them. The Board has had no occasion to date to provide for initial decision by its examiners in economic proceedings, but there are some classes of fairly routine changes or amendments in certificates which, I think, might properly be considered for that kind of action, it being perfectly clear, of course, that there is always the right in the party affected to obtain review by the Board. That is made clear in the Administrative Procedure Act.

Mr. HINSHAW. Then, obviously, only those decisions that were noncontroversial are the ones that could be made by employees.

Mr. NUNNELEY. That is correct, I think.

Mr. HINSHAW. So, it is obvious if they were controversial there would be an appeal.

Mr. NUNNELEY. That, I think, is right. There may be on occasion situations, for instance, where a community and an air line are in

Generated through HathiTrust on 2026-03-17 16:38 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by

Original from
UNIVERSITY OF MINNESOTA

agreement that a particular point should be added to a route. There is no opposition, and no other carrier is directly affected thereby. In such a situation it would seem to me it might be appropriate to permit the examiner to make an initial decision which, if no one contested it, would become the final decision.

Those situations are extremely limited, and to date the Board has not employed that technique. However, we thought it undesirable to foreclose the Board from using it if there should be any area in which it appeared to become useful.

Mr. HINSHAW. Would this suggested procedure for assignment of the work tend in any way to lengthen the time in which the Board would take to render its final decision in cases of controversies?

Mr. NUNNELEY. I do not believe so. I see no reason why it should lengthen the time.

Mr. HINSHAW. I remember a few years ago when there was a question up here in connection with two cities—I think Akron and another city in Ohio—as to whether or not the main air-line stop would be moved from the airport of one city to the other airport. There was much controversy in the matter. One city was opposing the other city. The examiner had made the recommendation that the airport stop be moved to the other airport. Is there any reason why, under this bill, the final decision would be in any way postponed longer than it was actually postponed in the case I mentioned?

Mr. NUNNELEY. No, sir; there is no reason in this bill why it should be or would be. I don't see that this bill would have any bearing on a situation of that character with respect to the time element involved.

Mr. HINSHAW. Would this bill give the examiner, counsel, or anybody else the power to issue an initial order establishing an entirely new route, such as a national-interest route or anything of that sort?

Mr. NUNNELEY. No, sir. When you say an initial order, you mean an initial decision after the hearing and other procedures?

Mr. HINSHAW. Yes.

Mr. NUNNELEY. This would authorize the Board—or, to put it the other way around, this would not take away from the Board the authority it now has under the Administrative Procedure Act—to permit an examiner to make an initial decision in any such case. It simply does not affect the existing situation. I cannot conceive of the Board's actually delegating that sort of authority in that kind of important situation.

Mr. HINSHAW. What about a North Atlantic area case? Would he have authority to issue an initial order in a case like that?

Mr. NUNNELEY. Yes, sir; the Board now has authority to give it to him under the Administrative Procedure Act. He doesn't actually have it under our established rules and regulations, but the Board could so provide if it found that was the proper way to conduct its business.

Mr. HINSHAW. It would seem to me just offhand that that would establish a case which had to be fought. In other words, it would firmly establish a position which would have to be changed by order of the Board. At the present time, under the procedures of the Board, when the examiner makes a report, the Board does not have to make any findings at all.

Mr. NUNNELEY. That is correct.

Generated through HathiTrust on 2026-03-17 16:38 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google    Original from
UNIVERSITY OF MINNESOTA

Mr. HINSHAW. Hence, under this bill, it becomes a question of contesting an examiner's report before the Board if the air lines, communities, or any other interested party may so desire. I wonder if the fact that the initial order is issued by the examiner would so establish the case that it might be more difficult to amend by the Board.

Mr. NUNNELEY. I do not see that the issuance of an initial decision would make any substantial or significant difference from the present practice where the examiner issues a recommended decision which is the subject of exceptions by the parties and of briefs and oral argument, and a good deal of that is directed to the examiner's recommendation under the existing procedures. I do not see that it would make any difference in the contested case whether the initial action by the examiner was a recommended decision or an initial decision which does not become effective if it is challenged.

On the other hand, in cases in which there is no contest, it would save the additional step of going to the Board and the necessity of formal action by the Board in ratifying the examiner's action.

Mr. HINSHAW. When Mr. Tipton comes up, I would like to have him be prepared to answer that question, because it seems to me it might be that way. If it is not, that is all right. That is all, Mr. Chairman.

Mr. BECKWORTH. Are there other questions?

Mr. O'Hara?

Mr. O'HARA. The language on page 3, lines 19 and 20, reads:

The Board, upon its own intiative, may reconsider the order or other action of such individual or individuals either before or after it has become effective—

and so forth.

In my judgment, that limits it solely to the initiative of the Board. Would it not be better to say, "The Board may upon its own initiative * * *"? The question of the construction of that whole section is centered there. Certainly it is not intended that way, but I think that construction could be taken from it.

Mr. NUNNELEY. I don't share your apprehension about it, Mr. O'Hara, but certainly I would have no objection to that shift in the language. It seems to me that, as it now stands, the bill provides that the Board shall pass upon any application for review by any person affected or that the Board, exercising its own power, in the absence of any objection or complaint, may undertake to review the matter because it feels a possibility of erroneous action has occurred.

Mr. O'HARA. I am particularly interested and concerned because obviously you do give, commencing on line 10, the right of the parties to apply for modification.

Mr. NUNNELEY. That is correct.

Mr. O'HARA. Then you follow that up and say that "The Board, upon its own initiative, may do so and so."

Mr. NUNNELEY. The purpose of that sentence is to say that the Board may reconsider it even if no party objects to the action.

Mr. O'HARA. I realize that, but let's put the word "may" in there, "May upon its own."

Mr. NUNNELEY. Excuse me, sir, but the word "may" is in line 9.

Mr. O'HARA. But I do not want it there. I want it so that it says "The Board may." Insert the word "may" following "Board" there.

Mr. BECKWORTH. You want to transpose it.

Generated through HathiTrust on 2026-03-17 16:43 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized


Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

Mr. O'HARA. Yes. It makes a lot of difference in what that language means to put it in after that.

Mr. NUNNELEY. I am perfectly happy to have the change.

Mr. O'HARA. I hope it does, anyway.

Mr. NUNNELEY. In my book it doesn't, Mr. Congressman, but I am perfectly happy to have the change made because it doesn't seem to me to make any difference. We would agree with that without any further discussion.

Mr. Congressman, if I may, I will state it this way: We are perfectly in agreement with your purpose; and, if you feel that the change makes that purpose clear, we certainly would urge that change, too.

Mr. O'HARA. There is one other question with reference to the examiner's making findings which in effect are findings of fact and conclusions of law of a court. Suppose one of the parties affected desired to follow up procedurally to make a motion to modify, change, or amend the findings or the decision of the examiner. Is there any question but that, then, that is completely upon both the facts and the law before the Board, upon the entire record of the facts, upon the entire scope of the law?

Mr. NUNNELEY. No. Both the facts and the law to which exception is taken go to the Board. I say, "To which exception is taken," because I don't think the Board would necessarily reconsider any matters to which no exception was taken unless it desired to do so on its own intiative.

Mr. O'HARA. Then, let us say that it applied merely to the exceptions that are taken, but does then the Board have full power of review of both the law and the facts involved in that?

Mr. NUNNELEY. The Board has full plenary power to review.

Mr. O'HARA. It would not be a reopening or a de novo trial necessarily; would it?

Mr. NUNNELEY. I would call it a de novo trial, Mr. Congressman, because that means a retrial of the entire matter as though it had not in any respect been previously decided.

Mr. O'HARA. Suppose here was a decision in which there were exceptions taken to certain parts of the decision. Does the Board then seek to hold hearings upon that question de novo?

Mr. NUNNELEY. It would receive argument in the form of briefs and oral arguments relating to the exceptions, and it would then decide the case.

Mr. O'HARA. I mean, would it then go in and reopen and try the matter?

Mr. NUNNELEY. No; it would not do that. It would start afresh to reconsider the points raised by the exception.

Mr. O'HARA. Based upon the evidence that was introduced in the record before the examiner.

Mr. NUNNELEY. Yes, sir.

Mr. O'HARA. Mr. Hinshaw asks whether new evidence could be introduced at that point.

Mr. NUNNELEY. New evidence could be introduced in the proceeding if the parties sought that right and the Board granted it. It would depend upon their showing the necessity for further evidence at that stage.

91730—49——2

Generated through HathiTrust on 2026-03-17 16:44 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by

Original from
UNIVERSITY OF MINNESOTA

Mr. O'HARA. There is a situation in the courts of law in which a new trial is asked for on the ground of newly discovered evidence. There is a hearing before an examiner and it is appealed, or whatever you may call it, to the Board. Then the party appealing finds there is additional evidence, or the party responding may find there is additional evidence they desire to offer. What provision is there in the existing law or in this act which would permit that, which might become of importance?

Mr. NUNNELEY. There are a number of provisions which authorize and direct the Board to conduct its proceedings in a manner conducive to orderly dispatch of business and the ends of justice. Under the presently existing situation, where new evidence becomes available, the parties may file motions to reopen the hearing and take that further evidence. They have to make a showing, of course, which warrants such action by the Board, but that remedy is available to them, and if the showing is made the Board will and on occasion has reopened a proceeding to take further evidence.

I would like at this stage to emphasize one thing. This bill (H. R. 4082) does not affect that situation in any respect. What we are really discussing is the existing situation under the Administrative Procedure Act and the existing provisions of the Civil Aeronautics Act. This bill would not affect the relation of the Board to its examiners or the remedies that are available to the parties where they want to attack an action of the examiner in any respect.

Mr. O'HARA. My concern and my question was directed because of what I consider has been the growth of administrative injustice oftentimes in the procedures which result when an appeal is taken; that are limited in the review of that to a very marked degree. The appellant is limited to practically a question of law. I want to be sure that in this situation there is a complete review when it goes to the Board, from the examiner; that, when an appeal is taken from the examiner's report of findings, there is a complete review before the Board. You feel that there is nothing intended by this bill in any way to limit the appellant, or the other side necessarily in rebuttal, in presenting a complete review of both the facts and the law that were presented at the time the examiner held the hearing, or, in the event of additional evidence that might be offered by the parties, that could be offered at that time in the hearing before the Board. Is that correct?

Mr. NUNNELEY. That is correct. There is nothing in this bill which would prevent such a review or affect such a review in any way.

Mr. O'HARA. With reference to the other provision of subsection (4) on page 3——

Mr. HINSHAW. If I may ask the gentleman from Minnesota to yield——

Mr. O'HARA. I would like to finish this question and then I will be through. Go ahead.

Mr. HINSHAW. Right along the line that you were discussing, as I understand the procedure now, when the examiner makes a report and that report goes before the Board for hearing, the report is open for any new evidence that may be presented before the Board. Is that not correct?

Mr. NUNNELEY. Normally there is no new evidence presented after the hearing is closed by the examiner. There is a procedure available to the parties whereby if there is new evidence that they feel should be

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

received, they can come in and move the Board to receive it. That seldom happens between the time of the examiner's report and the hearing of oral argument by the Board.

Mr. HINSHAW. I think Mr. O'Hara and I both want to be sure that the applicant, or whoever, is not foreclosed from offering additional evidence before the Board in case of an appeal. Is that not right?

Mr. O'HARA. That is right, but I appreciate that the party desiring to offer the new evidence would probably have to make a motion to reopen the hearing.

Mr. NUNNELEY. Yes.

Mr. O'HARA. And he would have to justify it by affidavit or some other procedural method to justify the Board's reopening the case. I realize you cannot keep on trying these things over and over.

Mr. NUNNELEY. That is right. He must show, for instance, that that evidence wasn't reasonably available to him at the time of the earlier hearing, or similar circumstance which warrant a reopening of the proceeding of the case. Otherwise, we would never get our proceedings closed.

Mr. O'HARA. That is right, I appreciate that. I did not want to extend that ad nauseam.

Mr. NUNNELEY. But that procedure is available to him under our existing regulations. This will not affect that in any way.

Mr. O'HARA. Why did you use this language, to which Mr. Hinshaw also called your attention, in line 21:

If upon reconsideration by the Board it shall appear that the order or other action in question is in any respect unjust or unwarranted, the Board shall reverse, change, or modify the same accordingly.

I realize that there must be some justification for the Board to change or modify the findings or the order of the examiner, but why would it not be sufficient to say "If upon reconsideration by the Board it shall appear that the order or other action in question should be changed or modified, the Board may do so"?

I realize it must be unjust or unwarranted, but I am wondering if that does not limit the right of the Board possibly to a degree that it should not be limited. I think when a matter comes before the Board, they should have unlimited right to change the order of the examiner.

Mr. ROGERS. Will you yield just 1 minute for an observation?

Mr. O'HARA. Yes, sir.

Mr. ROGERS. I have been studying this. Why could not this verbiage be put in there, which possibly would help it a little: "If upon reconsideration it shall appear that the order or other action in question. is not justified or warranted," then you leave out that little vagueness in there.

Mr. NUNNELEY. That language also would be perfectly satisfactory to us, Mr. Congressman. I might explain that this language in the bill I am sure was taken directly from similar language in the Interstate Commerce Act.

Mr. ROGERS. Do you not believe the words "justified and warranted" are a positive approach?

Mr. NUNNELEY. I think that approach might be an improvement on this language.

Mr. O'HARA. My point, I might say, is that I feel, after all, the Board is actually a quasi-judicial body that was created by the Con-

Generated through HathiTrust on 2026-03-17 16:44 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

gress, not the examiner. I think it should be if for any reason the Board feels that the order of the examiner should be modified or changed, whether it is unjust or unwarranted. Maybe that covers everything in the book, I don't know. They are the ones that we look to to decide these things. I think they should have that right. It may be there is nothing to worry about in the language.

Mr. NUNNELEY. I think you were about to suggest another way of wording this, which was that—

If it shall appear that the order or other action in question should be modified, the Board may reverse, change, or modify the order.

That language would also do the thing we want.

I think we are agreed in purpose. We thought this language was satisfactory which was used in the Interstate Commerce Act, and no question, so far as we know, has ever arisen under it. But the affirmative approach to it would certainly be a perfectly acceptable approach to us.

Mr. ROGERS. Of course it would have to be justified or they would not want to grant an amendment.

Mr. NUNNELEY. Yes, that is right. I think it is to be expected that where the Board thinks the employee has acted reasonably, it will not reverse him unless there is a specific reason for doing so, because otherwise the whole purpose of delegation, which is to get a good deal of the less important and less controversial actions in the hands of the employees where they don't have to be reviewed by the Board, might be lost. Certainly where the party seeks review, then he should get review. I think this bill, or this bill with the suggestions that have been made, does provide for that review. Certainly it was intended to.

Mr. HALL. Having been a school teacher, I think that should be referred to our chairman.

Mr. BECKWORTH. Mr. Nunneley, you make the statement on page 10:

any such delegation of authority would be published in the Federal Register in accordance with the terms of that act.

Does that imply that the delegation of authority would be published in most instances before any action is taken by the person who received the authority?

Mr. NUNNELEY. I think it states that it will be published in all instances before any action is taken.

Mr. BECKWORTH. There would likely be no emergency delegation which one would not have an opportunity to see in the Federal Register?

Mr. NUNNELEY. I do not anticipate that. The Administrative Procedure Act requires that delegations be published and further states that no one can be required to have resort to procedure that isn't published.

Mr. BECKWORTH. I desire to be sure that before a person is acting, notice of a definite nature would have been given that such a delegation had been made.

Mr. NUNNELEY. That is what this was intended to say. We construe it to come within those provisions which do require notice.

Mr. BECKWORTH. With reference to the exact language that you refer to on page 2, which you describe in lines 10 and 11, will you state again what you feel should be done? Be specific beginning in line 9.

Generated through HathiTrust on 2026-03-17 16:44 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google      Original from UNIVERSITY OF MINNESOTA

Mr. NUNNELEY. Beginning in line 9, the section would read "or to an eligible employee or employees of the Board designated for action thereon," deleting the words "by such order."

Mr. BECKWORTH. You would strike out those three words, "by such order"?

Mr. NUNNELEY. Yes, sir. Then continuing, "The Board may at any time—" I would again strike out "by order." Those might possibly simplify, as I suggested before, a requirement under section 1005 of our act regarding findings which are not appropriate to this type of action. Therefore we suggest their omission. I will further suggest, as you will note, that words "by such order" in line 10 have no antecedent, in fact, in the section.

Mr. BECKWORTH. Are there no other questions by any member?

Thank you, Mr. Nunneley, very much.

The next witness is Mr. Tipton, of the Air Transport Association. Mr. Tipton.

## STATEMENT OF STUART G. TIPTON, GENERAL COUNSEL, AIR TRANSPORT ASSOCIATION OF AMERICA, WASHINGTON, D. C.

Mr. TIPTON. Mr. Chairman and members of the committee, I will be very brief. My name is Stuart G. Tipton, general counsel of the Air Transport Association of America, Washington, D. C.

The Air Transport Association favors this legislation, H. R. 4082. We have a deep and abiding interest, of course, in the expeditious handling of the Civil Aeronautics Board's work since we are affected by the results of that work. Consequently, we are glad to see action taken which will permit more efficient and expeditious disposition of these matters and at the same time maintain the necessary procedures to protect the interest of the parties in Civil Aeronautics Board proceedings.

I also had some comment with respect to paragraph (4) on page 3, which the committee has just been discussing. I was approaching it with the same problem in mind that the members of the committee have, to make sure that the Board had plenary power to review action taken by a person to whom they had delegated their work. I found, on examining the bill, two points at which I thought the bill could be improved with that in mind.

One is on page 3, line 19. The sentence which ends there says that an application by a party to the proceeding for reconsideration may be granted by the Board if the Board has reason to believe that the action was taken in error. I was a little concerned that that phrase was a limitation on the Board in granting reconsideration, because "in error" sometimes is taken to mean in legal error. If the employee were to make a mistake of law, then you could reconsider it, but if his determination was merely bad as a matter of policy, then the Board couldn't review it. It might be construed otherwise, but we were concerned and thought we could bring that to the attention of the committee.

We suggest that the section provide, as it does in the Interstate Commerce Act, that "reconsideration may be granted if sufficient reason therefor be made to appear," which is a general form of words which will permit the Board full scope in reviewing these things.

Generated through HathiTrust on 2026-03-17 16:44 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

18          CIVIL AERONAUTICS ACT AMENDMENTS

Mr. O'HARA. Mr. Tipton, I might say that I think a complete right of review should be given to the party making the review. I think he should not be restricted in any way.

Mr. TIPTON. That is particularly true for the reason that you stated a moment ago, Mr. O'Hara. The appeal from a decision of the Board is so severely limited under existing law that the courts do not get to review the facts, and we want to make sure that the Board does not place itself, that is, the responsible agency doesn't place itself, in a position where it can't review the facts, either.

Mr. O'HARA. I think it is tremendously important because if the Board should take a limited view on the right of review of the examiner, then when the appellant got into the circuit court of appeals, where he has to go, he is limited almost exclusively to a question of law, where damage may be done upon the question of fact.

Mr. TIPTON. That is certainly right.

A second point, I think, concerns the words that the committee was discussing a moment ago and on which Mr. Rogers and Mr. O'Hara both made suggestions. I will make another suggestion which has the effect of reducing the length of the sentence even more. I would suggest that the sentence beginning in line 21, which starts "If upon reconsideration," be rewritten to say: "Upon reconsideration, the Board may reverse, change, modify, or affirm such order or other action in whole or in part."

In other words, the effect of my provision has been to strike out that "it shall appear that the order or other action in question is in any respect unjust or unwarranted."

Mr. O'HARA. You and I have not consulted about this, Mr. Tipton.

Mr. TIPTON. No; that is right. I have been very interested in the fact that all concerned have picked up the same question.

That terminates our comments on the bill, Mr. Chairman.

Mr. BECKWORTH. These two amendments, then, you suggest as in your opinion being helpful to the legislation.

Mr. TIPTON. Yes. I almost forgot Mr. Hinshaw's question that he asked me to be prepared to answer. His question, as I recall, was whether, having an examiner reach a tentative decision on a new route matter, for example, would place the parties or anyone wishing to object to it in a position where that would be an obstacle to getting a complete and full Board review.

I agree with the answer that Mr. Nunneley made to that question. A tentative decision by an examiner is in fact no different than an examiner's recommendations as far as its effect on the Board is concerned at present. I am sure it wouldn't cause any more difficulty. We now have examiner's reports, so-called, and the parties, carriers, and others, come in and object to those examiners' reports before the Board. Often the Board changes them and often the Board adopts them. I don't think calling that a tentative decision would make any difference.

Mr. BECKWORTH. Thank you, Mr. Tipton. We are always happy to have you.

Mr. O'HARA. I would like to ask Mr. Nunneley, while he is here, if he has any particular objection to the suggested amendments of Mr. Tipton.

Generated through HathiTrust on 2026-03-17 16:44 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA

Mr. NUNNELEY. No, sir. Those suggestions are acceptable. I think we are simply talking about differences in language; that our purposes are the same and that so far as I can tell upon the examination I have made, the language proposed by Mr. Tipton is entirely acceptable to us.

Mr. BECKWORTH. Do we have other witnesses who desire to be heard?

(No response.)

Mr. BECKWORTH. This concludes the hearings on H. R. 4082.

(Thereupon, at 11 a. m., the hearing was adjourned.)

Generated through HathiTrust on 2026-03-17 16:44 GMT
https://hdl.handle.net/2027/umn.31951d03518336p / Public Domain, Google-digitized

Digitized by Google

Original from
UNIVERSITY OF MINNESOTA